[No. 4445–1.   Division One.   March 14, 1977.]

WILLIAM A. DAWSON, ET AL, *Appellants,* v. J. LOREN TROXEL, ET AL, *Respondents.*

*Marston & Hodgins, James T. Marston,* and *Paul G. Gillingham,* for appellants.

*Gary M. Little* and *Carmela M. Bowns,* for respondents.

FARRIS, J.—In July 1975, the Seattle Public School District rescinded the previously granted "special student transfers" of all nonblack students who resided in the "Garfield home attendance area." Certain students whose transfers were revoked (and their parents) thereafter brought this action seeking damages and declaratory and injunctive relief. In September, a preliminary injunction was granted when the court found that the procedures by

which the decision to revoke the transfers was made violated due process. Early in 1976, the matter was tried on its merits and resolved against the students. They appeal.

The students contend that the trial court erred in holding that (1) the procedures adopted by the school district subsequent to the preliminary injunction met the due process requirements of the Fourteenth Amendment and (2) the plan adopted by the school district (which is described by the students as a step–by–step desegregation plan with no evidence to establish what further steps are formulated or immediately contemplated) is constitutionally permissible.

Following entry of the preliminary injunction, the school district advised the students on September 3 that their special transfers were to be rescinded and that any appeal must be filed by September 12. On September 16, without notice to the students, a meeting was held and the decision granting or denying the transfers was made. These procedures are challenged on two grounds: they failed to comply with the administrative procedures act, RCW 34.04, and they violated procedural due process.

The questions of whether the provisions of the administrative procedures act apply to the school district and, if so, whether they were violated were not raised at the trial level. We will not consider an issue or theory raised for the first time on appeal. *Peoples Nat'l Bank v. Peterson,* 82 Wn.2d 822, 514 P.2d 159 (1973); *State v. Tradewell,* 9 Wn. App. 821, 515 P.2d 172 (1973).

The scope of due process application is flexible; "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). Whether the procedures employed by the school district in revoking the special transfers are consistent with the due process rights found to exist by the lower court is determined by weighing the "government function involved as well as . . . the private interest that has been affected . . ." *Cafeteria*

& *Restaurant Workers Local 473 v. McElroy,* 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 81 S. Ct. 1743 (1961).

Under the circumstances here, notice, an opportunity to object, and a subsequent consideration of those objections satisfy rudimentary due process requirements. It would have been better procedure to have also notified interested parties of the meeting at which the objections were to be considered, even though such parties would have been present as observers only, but we do not hold that under all of the circumstances here, the failure to do so is a fatal defect.

The students argue that the revocations are constitutionally infirm in *manner* and *effect:* in *manner* because by revoking only white students' transfers, the school district utilized a racial classification allegedly in contravention of the equal protection clause of the United States Constitution; in *effect* because the transfer revocations have "forced" the students to attend racially segregated schools pursuant to a step–by–step plan that does not yet contemplate full integration by its design as allegedly required by *Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 495 P.2d 657, 50 A.L.R.3d 1076 (1972).

█ Neither *Brown v. Board of Educ.,* 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686, 38 A.L.R.2d 1180 (1953) nor subsequent decisions have held that racial classifications are per se unconstitutional. *See DeFunis v. Odegaard,* 82 Wn.2d 11, 507 P.2d 1169 (1973). On the contrary, "in some circumstances a racial criterion *may* be used—and indeed in some circumstances *must* be used—by public educational institutions in bringing about racial balance." *DeFunis v. Odegaard, supra* at 27.

█ The students suggest that progress toward achieving desegregation has been unduly delayed. The record is not sufficient for us to rule on that question. The question here is whether the voluntary desegregation plan is constitutionally infirm if it does not immediately lead to or contemplate a 50/50 racial balance. When there is a less than 50/50

racial mix in the school population, *all* schools in the district cannot achieve a 50/50 racial balance. While a school district must come forward with a plan that realistically promises to work "now," *Green v. County School Bd.*, 391 U.S. 430, 439, 20 L. Ed. 2d 716, 88 S. Ct. 1689 (1968); *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971); *Alexander v. Holmes County Bd. of Educ.*, 396 U.S. 19, 24 L. Ed. 2d 19, 90 S. Ct. 29 (1969), the question is whether such a plan is *initiated* immediately and whether the period of time from initiation to completion of the desegregation process is no longer than is absolutely necessary considering only *real* as opposed to *practical* limitations.

The record reflects that the revocation of the transfer privilege here has resulted in a change in the black/white racial balance at the school in question from 80/20 percent to 65/35 percent. Racial segregation is an evil which can be eradicated by a withdrawal of the consent which enabled it to flourish. The decision to revoke the transfers was an administrative action calculated toward that end. *See Citizens Against Mandatory Bussing v. Palmason, supra; State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973). Other than due process concerns, no fundamental rights are involved in the revocation.

█ We adhere to the rule announced in *Citizens Against Mandatory Bussing v. Palmason, supra* at 457–59:

[I]t was the duty of the school board to act in the best interests of the majority of students; and the fact that some students might suffer adverse effects was not a consideration which, in law, they were required to find controlling. . . .

. . .

. . . the right of a parent to direct the education of his child is a limited right. If he sends the child to a private school, it must be a school which meets the educational standards of the state. And if a parent elects to send his child to public school, he must abide by the reasonable rules and regulations of public school authorities. *Wayland v. Hughes*, 43 Wash. 441, 86 P. 642 (1906).

134

Affirmed.

SWANSON and ANDERSEN, JJ., concur.