[No. 48565-8. En Banc. December 29, 1982.]

BRUCE WILSON, ET AL, *Petitioners,* v. GLEN L. STEINBACH, ET AL, *Respondents.*

*Timothy W. Carpenter*, for petitioners.

*Pinckney M. Rohrback* and *Keller, Rohrback, Waldo & Hiscock*, for respondents.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for petitioners.

WILLIAMS, J.—Petitioners Bruce and Carolyn Wilson, the surviving parents, and the estate of Shelly L. Wilson brought this negligence action seeking damages from respondents Glen L. and Jane Doe Steinbach under the wrongful death and survival action statutes, RCW 4.20.010 and RCW 4.20.046. The trial court granted respondents' motion for summary judgment and dismissed the claims. In

an unpublished per curiam opinion, Division One of the Court of Appeals affirmed the trial court's entry of summary judgment against petitioners. *Wilson v. Steinbach,* 31 Wn. App. 1012 (1982). We likewise affirm.

Shelly L. Wilson, age 19, was engaged to be married to respondents' son, Gerald Steinbach. On the evening of December 23, 1978, and in the early morning hours of December 24, 1978, Ms. Wilson attended a pre–Christmas party hosted by respondents. The beverages available at the party included two bottles of liquor provided by respondents, but guests were also encouraged to bring their own beverages if they so desired. While at the home of respondents, Shelly Wilson consumed an undetermined amount of alcoholic beverages. It is unknown whether Ms. Wilson consumed alcoholic beverages before attending respondents' party. Upon leaving the party with Gerald Steinbach as her passenger, Shelly Wilson lost control of her vehicle, struck a utility pole, and was killed. Counsel for petitioners alleged that, at the time of her death, Shelly Wilson's blood alcohol content was .19 percent. The evidence before the trial court on summary judgment, however, did not substantiate this allegation.

Petitioners commenced this lawsuit on November 9, 1979, alleging negligence on the part of respondents in permitting Shelly Wilson to become intoxicated and thereafter operate a motor vehicle. Respondents answered by denying liability and asserting, as an affirmative defense, Ms. Wilson's own negligence as the proximate cause of her death. Respondents then moved for summary judgment based on the pleadings and the affidavits of Glen L. Steinbach, Carol Steinbach, and Gerald Steinbach. Petitioners countered with an affidavit of their legal counsel which set forth no facts to contravene the factual assertions of the three Steinbach affidavits. The trial court granted respondents' motion for summary judgment and dismissed the action. The Court of Appeals, Division One, affirmed. *Wilson v. Steinbach, supra.* We then granted petitioners' petition for review.

■ Since the trial court decided the liability issue in this case on an order of summary judgment, we must engage in the same inquiry as the trial court. *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). A summary judgment motion under CR 56(c) can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972); *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972). The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Morris v. McNicol*, 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974).

■ Prior to 1955, Washington had a "Dramshop Act" (formerly RCW 4.24.100) which provided a civil cause of action to those injured by an intoxicated person against any person who, by providing intoxicating liquors, caused the intoxication of such person.[1] In 1955, the Legislature repealed that act. Laws of 1955, ch. 372, § 1, p. 1538. Since that time, the applicable law has been the following:

It is generally held that there can be no cause of

---

[1]By Laws of 1955, ch. 372, § 1, p. 1538, the Legislature repealed the "Dramshop Act", which provided: "Every husband, wife, child, parent, guardian, employe, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action, in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication of such person, for all damages sustained, and the same may be recovered in a civil action in any court of competent jurisdiction. On the trial of such action, the plaintiff or plaintiffs must prove that such intoxicating liquors were sold under circumstances sufficient to lead a man of ordinary intelligence to believe that such sale would probably result in intoxication." Laws of 1905, ch. 62, § 1, p. 120 (formerly RCW 4.24.100).

action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, even though the liquor was sold or given to one in violation of a law other than under a civil damage act, so long as the person to whom the liquor was sold or given was not in such a state of helplessness or debauchery as to be deprived of his will power or responsibility for his behavior.

*Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 762, 458 P.2d 897 (1969), quoting with approval from 30 Am. Jur. *Intoxicating Liquors* § 521 (1958). *Accord, Hulse v. Driver,* 11 Wn. App. 509, 512–14, 524 P.2d 255 (1974). In *Halvorson,* we recognized and adopted the general common law rule of nonliability for furnishing intoxicants to an able–bodied person, while simultaneously recognizing the exceptions to the rule for obviously intoxicated persons, persons in a state of helplessness, or persons in a special relationship to the furnisher of intoxicants. *Halvorson,* at 762–63.

In the instant case, the trial court considered the pleadings and affidavits of Glen L. Steinbach, Carol Steinbach, and Gerald Steinbach in determining the summary judgment motion. A careful review of these documents indicates petitioners have failed to establish that Shelly Wilson was in an obviously intoxicated or helpless condition at respondents' home that night. The uncontroverted affidavits of each of the Steinbachs indicate that none of them had any indication Shelly Wilson was intoxicated and each believed she acted in a "responsible and ladylike" manner. Clerk's Papers, at 8.

■■ The trial court also considered the opposing affidavit of Timothy W. Carpenter, attorney for petitioners. As we noted in *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 880, 431 P.2d 216 (1967), an attorney's affidavit is entitled to the same consideration as any other affidavit based upon personal knowledge if the affidavit is based upon the attorney's own knowledge of the facts set forth therein. Here, however, the attorney's affidavit sets out no facts based on his personal knowledge of the case. Instead, the affidavit contains legal and factual arguments used to

question the credibility of each of the Steinbach affiants. There is nothing in Mr. Carpenter's affidavit to contravene the factual assertions of the Steinbachs and thus it cannot place into issue the material fact of whether Shelly Wilson appeared to be extremely intoxicated. The settled rule in this state as to actions based on the *Halvorson* line of cases is that a person's sobriety must be judged by the way she appeared to those around her, not by what a blood alcohol test may subsequently reveal. *Barrie v. Hosts of Am., Inc., supra* at 643 n.1; *Shelby v. Keck,* 85 Wn.2d 911, 915, 541 P.2d 365 (1975). The affidavits clearly state the Steinbachs' belief that Ms. Wilson manifested no signs of intoxication on the night in question and appeared sober and "ladylike" at the party. This is supported by the fact that respondents had no objections to their son being a passenger in Ms. Wilson's car. Under the *Halvorson* rule, the trial court's dismissal of petitioners' claims by summary judgment was proper.

█ Petitioners attempt to avoid this result by arguing that respondents had a greater duty toward Ms. Wilson as a guest in their home than the defendant in *Halvorson* had to the injured third party. In other words, petitioners seek a rule which would require differing duties and render different results depending on the identity of the victim. We find this argument wholly unpersuasive. Recently, in the context of the family or household exclusion clause in automobile insurance policies, we rejected just such an attempt to justify different results based on the identity of the injured victims as violative of this state's public policy. *See Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 209, 643 P.2d 441 (1982). Our decision in *Wiscomb* was premised partially on the realization that exclusions based on the identity of the injured party permit such distinctions to divert attention from the real issue of the conduct of the driver—the party who is or may be negligent. *Wiscomb,* at 209. We discern no better reason under these circumstances to reach a different result based on the identity of the injured party, whether it be the guest herself or a third

party injured by the guest. The relevant inquiry here is whether the standard of care enunciated in *Halvorson* was observed or breached by respondents. Without a showing that Ms. Wilson appeared obviously intoxicated, helpless, or was in some special relationship with respondents, we find no basis for a cause of action under *Halvorson.*

Next, petitioners and amici on behalf of Washington State Trial Lawyers Association contend petitioners should be permitted to avoid the *Halvorson* rule by establishing that respondents were negligent *per se. See Callan v. O'Neil,* 20 Wn. App. 32, 39–40, 578 P.2d 890 (1978). Petitioners premise this theory on the standard of conduct required by RCW 26.28.080(4) and RCW 66.44.270, both of which prohibit the furnishing or selling of intoxicating liquors to persons under 21 years of age. *But see* RCW 66.44-.270 (unlawful for person under 21 years of age to acquire, possess, or consume liquor) and RCW 66.44.290 (unlawful for person under 21 years of age to purchase or attempt to purchase liquor).

■ Petitioners did not raise the theory of negligence *per se* either in their pleadings or in argument to the trial court. This particular theory of recovery was first raised at the Court of Appeals. This is too late. The general rule in this state is that, except as to issues of manifest error affecting a constitutional right, we will not consider an issue or theory raised for the first time on appeal. *Peoples Nat'l Bank v. Peterson,* 82 Wn.2d 822, 829–30, 514 P.2d 159 (1973); *Dawson v. Troxel,* 17 Wn. App. 129, 131, 561 P.2d 694 (1977). Since petitioners' negligence *per se* theory was not raised in a timely fashion at the trial court, it falls squarely within the above rule. We therefore do not reach or decide the merits of petitioners' theory of negligence *per se.*

Finally, petitioners argue that despite the *Halvorson* rule, this court can change the common law rule to permit actions for negligence where social hosts serve liquor to minors. In favor of this proposition, petitioners cite *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity,*

258 Or. 632, 485 P.2d 18 (1971). In *Wiener,* a fraternity was found negligent for serving alcohol to a minor who subsequently injured a third party in an automobile accident. The court held that while a host is ordinarily not liable for injuries caused to third persons by intoxicated guests, there may be circumstances in which the host has a duty to deny his guests further access to alcohol.

The *Wiener* court emphasized, however, that each case must be determined on its own facts. Respondents concede that situations may arise where liability may be appropriate such as where the minor is very young and incapable of consenting to consume alcohol, where there is a great degree of social pressure on the minor to drink, or where extreme intoxication is a primary purpose in supplying liquor. Whether these or other factors would fall within the exceptions to the general rule of nonliability which we specifically set forth in *Halvorson,* at pages 762–63, is a question to be decided another day. In the case now before us Ms. Wilson was 19 years old, she apparently was acting and being treated as an adult, and there is no indication of pressure exerted upon her to drink to excess. Thus, under the limited facts of this case, we see no reason at this time to alter the rule of *Halvorson.*

Previously, we have stated that the proper body to change the law in this area is the Legislature.

> It may be that the social and economic consequences of "mixing gasoline and liquor" should lead to a rule of accountability by those who furnish intoxicants to one who becomes a tort–feasor by reason of intoxication, *but such a policy decision should be made by the legislature after full investigation, debate and examination of the relative merits of the conflicting positions.*

(Citations omitted. Italics ours.) *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 765, 458 P.2d 897 (1969). *See also Hulse v. Driver,* 11 Wn. App. 509, 513–14, 524 P.2d 255 (1974). It has now been 13 years since the above words were written and they are no less true today than they were then. We continue to believe that if any change is to be

made as to the civil liability of those who furnish intoxicants to persons who cause injury or death by reason of intoxication, that change should be by legislative mandate.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., STAFFORD, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

UTTER, J. (concurring)—For reasons set forth in the majority opinion, there has been a failure of admissible proof that the minor decedent was affected by consumption of alcohol served at the Steinbach home. Had the proof been sufficient, I would reach a result different from that favored by the majority.

In 1966 this court in *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 765, 458 P.2d 897 (1969) decided "[i]t may be that the social and economic consequences of 'mixing gasoline and liquor' should lead to a rule of accountability by those who furnish intoxicants to one who becomes a tort–feasor by reason of intoxication, but such a policy decision should be made by the legislature after full investigation, debate and examination of the relative merits of the conflicting positions."

The dissent in that case is more persuasive to me. The dissent noted, at page 768:

Legislation is not required and never has been. The instant case is one peculiarly suited to the judicial process. The ever–growing carnage on our highways is notorious. So is the relation between drunken driving and accidents. Plaintiff has alleged a clear and compelling factual case for foreseeable negligent harm, and this lawsuit is in that posture where inferences drawn from the allegations must be those most favorable to the plaintiff.

It requires no legislative fact–finding to establish that risk–creating conduct existed on the facts alleged. Legislative inaction is not proof of inexorable social or public policy. . . . If that determination is consistent with the analytic framework of the law of torts, it is legitimate and should be effectuated modernly in this appellate

court.

The author of the dissent then proceeds to frame the issue as whether the common law right of action for negligence should be abridged by judicially created barrier to recovery, and states, at page 770:

It should be clear to any responsible citizen that automobile accidents of the sort upon which this suit is brought are the foreseeable result of furnishing drink to alcoholic drivers, if not perhaps the foreseeable result of furnishing excessive drink to anyone driving a high-powered modern automobile on a public thoroughfare. The majority's denial of liability is based on its own reasoning as to social policy, which I believe is unnecessarily limited.

Needless to say, I find this language and the rest of the dissent persuasive and, if the facts proven in this case were sufficient, I would adopt the position of the four dissenters in *Halvorson* and hold a common law right of recovery could and should be found to exist in this case.