[No. 7351–3–III.   Division Three.   February 19, 1987.]

NEIL MARGOLES, *Respondent*, v. JAMES HUBBART, ET AL, *Petitioners.*

*Duane M. Swinton, Michael D. Currin,* and *Witherspoon, Kelley, Davenport & Toole,* for petitioners.

*Brian C. Balch* and *Powell & Morris,* for respondent.

MUNSON, J.—Discretionary review was granted wherein defendants, James and Sherry Hubbart and Newport Publications seek reversal of an order denying their motion for summary judgment in a defamation action. We affirm.

The plaintiff, Neil Margoles, was the manager of the Port District of Pend Oreille from November 1, 1978, until his resignation on March 31, 1982. The defendants, James and Sherry Hubbart, and their wholly owned corporation, Newport Publications, publish the Newport Miner, a local newspaper. Mr. Margoles brought an action for defamation, contending that three articles, written by Mr. Hubbart and published in the Newport Miner, each contained several defamatory statements concerning the results of an audit of the Port conducted by a field examiner for the State Auditor's office.

The trial court refused to dismiss the case, but granted partial summary judgment, finding that Mr. Margoles was a public official at the time the articles were published.[1] Mr.

---

[1] In this court's file are two depositions and a copy of the preliminary audit report. None of this material was before the trial court, hence cannot be considered. Unfortunately, the order on summary judgment does not contain a reference

Hubbart contends the trial court erred in not granting the balance of his motion for summary judgment as there was no evidence he published the three articles with knowledge of their falsity or with reckless disregard for the truth. Because Mr. Margoles does not contest the court's finding that he was a public official at the time the articles were published, this court need only consider whether Mr. Margoles produced sufficient evidence of actual malice on the part of Mr. Hubbart to withstand a motion for summary judgment.

A trial court will grant a motion for summary judgment only if the pleadings, affidavits, depositions, and all reasonable inferences therefrom, viewed in a light most favorable to the nonmoving party, demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In reviewing the decision to grant summary judgment, this court engages in the same inquiry as the trial court. *Wilson*, at 437.

We recognize that in defamation cases, there are important considerations in determining whether to grant or deny a motion for summary judgment. *See Mark v. Seattle Times*, 96 Wn.2d 473, 484–85, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124, 73 L. Ed. 2d 1339, 102 S. Ct. 2942 (1982). A defamation plaintiff resisting a media defendant's motion for summary judgment must establish a prima facie case by evidence of convincing clarity.[2] *Mark*, at 487. A "public official" or "public figure" may not recover damages for defamation unless he or she proves the

to what documentation the trial court considered—that information was filed by a subsequent affidavit and did not include those three documents as being considered by the trial court. An order on summary judgment should contain the documentation considered by the trial court. *LeBeuf v. Atkins*, 93 Wn.2d 34, 604 P.2d 1287 (1980) and cases cited therein.

[2]*See also Anderson v. Liberty Lobby, Inc.*, ___ U.S. ___, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

defendant made the defamatory statement with "actual malice," that is, with knowledge that it was false or with reckless disregard for its truth or falsity. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964); *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983).

We find two instances which justify the trial court's denial of summary judgment: (1) the use of the word "funneled" to describe a transaction whereby Port money was paid to a company for which Mr. Margoles worked and, in turn, received by Mr. Margoles in salary; and (2) the use of the word "misappropriated" to describe Mr. Margoles' acceptance of payments from one port district while attending meetings and making a trip on behalf of another port district.

■ Mr. Hubbart's contention that personal hostility between himself and Mr. Margoles is irrelevant is not well taken. In *Rye v. Seattle Times Co.,* 37 Wn. App. 45, 678 P.2d 1282, *review denied,* 102 Wn.2d 1004, *cert. denied,* 469 U.S. 1087, 83 L. Ed. 2d 703, 105 S. Ct. 593 (1984), the court held that the reporter's knowledge of the hostility of his sources toward the plaintiff was not sufficient to establish a prima facie case by convincing clarity. The court did not say it was irrelevant. Here the issue is not the hostility of the sources, it is Mr. Hubbart's hostility that is relevant. The affidavit of Port District Commissioner John J. McLaughlin states that at one time Mr. Hubbart, angry when the newspaper did not get an expected "scoop," blamed Mr. Margoles and stated "he was going to get Neil Margoles even if he had to use the newspaper to do it." This comment at least raises an inference of Mr. Hubbart's hostility and forms the basis for the language used in the three articles.

We find the use of the words "funneled" and "misappropriated," combined with the alleged hostility between Mr. Hubbart and Mr. Margoles, raises an inference which creates a material issue of fact whether Mr. Hubbart published the statements with reckless disregard for their truth

or falsity.

Whether the other allegedly defamatory statements were made in the context of this alleged hostility, we leave for determination at trial.

The denial of summary judgment is affirmed.

McINTURFF, C.J., and PETRICH, J., concur.

Review granted by Supreme Court May 5, 1987.