[No. 38407-4-I. Division One. October 13, 1997.]

JOHN D. STRAUSS, ET AL., *Appellants*, v. THE CITY OF SEDRO-WOOLLEY, ET AL., *Respondents*.

*John M. Groen* of *Groen & Stephens*, for appellants.
*Patrick M. Hayden, City Attorney*, for respondents.

KENNEDY, A.C.J. — The owners of a mobile home park appeal the trial court's determination that they are not exempt, under RCW 58.17.040(7), from the requirement that they record a binding site plan in order to convert the mobile home park into condominiums. Persons wishing to subdivide property to create legal lots of record for condominiums who wish to avoid traditional subdivision requirements have the alternative of filing a binding site plan, but they must either follow traditional subdivision requirements or follow the binding site plan process in order to create legal lots of record for condominiums. The mobile home park owners in this case have not followed traditional subdivision requirements; neither have they filed a binding site plan. Accordingly, the trial court properly granted summary judgment to the City of Sedro-Woolley and dismissed the owners' complaint in its entirety.

## FACTS

John and Michelle Strauss and George and Vonja Cluphf (appellants) own the Skagit Valley View Mobile Home Park. The mobile home park was originally approved by the City of Sedro-Woolley Planning Commission in 1981, subject to certain conditions. The approval of the park was appealed by neighboring property owners. After a lengthy appeal process, the project owner prevailed and the City approved a Special Use Permit Agreement in 1989, authorizing the development of the mobile home park consistent with city ordinances in effect in 1981. The Special Use Permit Agreement was never recorded.

In 1993, the site was sold to Robert Jungaro, who actually built the mobile home park on the property. The construction process was marked by conflict between the City and Jungaro, and was delayed by lawsuits and stop-work orders. Eventually, the City, despite claiming that

the quality of construction on the site was substandard, approved the project and issued building permits. The project changed hands again and was eventually sold to the appellants.

In 1995, appellants sought to convert the mobile home park into condominiums in order to be able to sell individual lots instead of leasing them to tenants. Pursuant to RCW 64.34.200, governing the conversion of property to condominium status, appellants filed a number of documents with the Skagit County Auditor, including a condominium declaration, survey map, and "as built" plans. They did not include any document labeled "binding site plan" in their application. The Sedro-Woolley City Attorney responded to the appellants' application by letter, informing them that they were required to file a binding site plan in order to convert the park into condominium status:

> The City has completed its review of the attempted condominium conversion[,] . . . and maintains the position that it fails to meet the requirements of RCW 58.17.040(7), as well as the City ordinance regarding binding site plans for condominiums. . . .
>
> I am aware of your . . . argument that the unrecorded building permit plans might constitute a binding site plan. However, even if these plans were available and recorded in lieu of a binding site plan, they do not contain the language required by RCW 58.17.040(7) relating to ownership of the common areas, street and sewer improvements, which is a primary concern of the City.
>
> The City . . . requests that [you] comply with [Sedro-Woolley Municipal Code] Ch. 16.28, and record a binding site plan which meets the requirements of that ordinance and RCW 58.17.040(4).

The City took no further action to approve the condominium conversion.

Appellants did not heed the City's request that they file a binding site plan for the property. Instead, in December

1995, they filed a complaint seeking declaratory relief and alleging inverse condemnation, violation of the permit process, and violation of due process for the City's warning that it would block sales of condominiums unless they filed a binding site plan. Appellants moved for summary judgment on the declaratory relief portion of their complaint, contending: (1) that the site plan requirement of RCW 58.17.040(7) did not apply to projects, such as theirs, that were already constructed; (2) that even if the statute did apply, it was satisfied because under RCW 58.17.040(7), a binding site plan was "deemed to have been approved" when the City issued building permits for the mobile home park; and (3) that the special use permit approved by the City for the construction of the mobile home park met all the requirements of a binding site plan.

The trial court denied the appellants' summary judgment motion and instead granted summary judgment to the City, ruling that the appellants were required to submit a binding site plan in order to convert the park to condominium status and had not yet done so:

> I am convinced that 58.17.040(7) is applicable and does apply; that the Plaintiff has not met the statute with re[sp]ect to preparing or having approved a binding site plan, and what has occurred with regard to Plaintiff's project in the past in the Court's judgment does not constitute a binding site plan. Specifically, if I need to be redundant, the special use permit is not a binding site plan. So I deny Plaintiff's Motion for Partial Summary Judgment and grant Summary Judgment to the City[.]

The court dismissed the appellants' complaint in its entirety, ruling that their claims for damages failed because those claims were dependent on prevailing on the binding site plan issue.

This timely appeal followed.

## DISCUSSION

### I

Under ch. 58.17 RCW, two methods exist for subdivid-

ing land into individual lots, parcels, tracts or units. One is the traditional subdivision process under RCW 58.17.033. The other method, at issue here, is an alternative to the traditional subdivision process: RCW 58.17.035 allows municipalities to adopt by ordinance procedures for the division of land by use of a binding site plan as an alternative to traditional subdivision. The statute provides that municipalities may use this alternative means in three situations, the third of which is at issue here: "divisions of property as provided for in RCW 58.17.040(7)." RCW 58.17.035. RCW 58.17.040(7) applies to the creation of condominiums for which a binding site plan has been approved, and provides, in pertinent part:

> **58.17.040.** . . . .The provisions of this chapter shall not apply to:
>
> . . . .
>
> (7) Divisions of land into lots or tracts if: (a) Such division is the result of subjecting a portion of a parcel or tract of land to either chapter 64.32 or 64.34 RCW subsequent to the recording of a binding site plan for all such land; (b) the improvements constructed or to be constructed thereon are required by the provisions of the binding site plan to be included in one or more condominiums or owned by an association or other legal entity in which the owners of units therein or their owners' associations have a membership or other legal or beneficial interest; (c) a city, town, or county has approved the binding site plan for all such land; (d) such approved binding site plan is recorded in the county or counties in which such land is located; and (e) the binding site plan contains thereon the following statement: "All development and use of the land described herein shall be in accordance with this binding site plan, as it may be amended with the approval of the city, town, or county having jurisdiction over the development of such land, and in accordance with such other governmental permits, approvals, regulations, requirements, and restrictions that may be imposed upon such land and the development and use thereof. Upon completion, the improvements on the land shall be included in one or more condominiums or owned by an association or other legal entity in which the owners of units therein or their

owners' associations have a membership or other legal or beneficial interest. This binding site plan shall be binding upon all now or hereafter having any interest in the land described herein."

RCW 58.17.040(7). Although RCW 58.17.040(7) goes on to state that the binding site plan "may, but need not, depict or describe the boundaries of the lots or tracts resulting from subjecting a portion of the land to [the condominium chapters]," RCW 58.17.035 provides that individual lots may be administratively approved during the site plan process and then be filed with the county auditor along with a record of survey.

■ Lots created through the binding site plan procedure are legal lots of record. RCW 58.17.035. Project owners wishing to subdivide property to create legal lots of record for condominiums who wish to avoid the traditional subdivision requirements have no other alternative but to follow the binding site plan procedure.

■ Appellants nevertheless contend that the requirement that they file a binding site plan violates RCW 64.34.050(1) and therefore should not be imposed. RCW 64.34.050(1) provides that zoning, subdivision, building code or other real property laws "may not prohibit the condominium form of ownership or impose any requirement upon a condominium which [they] would not impose on a physically identical development under a different form of ownership." RCW 64.34.050(1). Appellants contend that the binding site plan requirement is an "additional requirement" in violation of this prohibition.[1]

We reject the appellants' contention that the binding site plan requirement is an "additional requirement" that would not be imposed if the mobile home park were held

---

[1] In reviewing the trial court's grant of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment will be upheld if, considering the facts in the light most favorable to the nonmoving party, the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Steinbach*, 98 Wn.2d at 437.

under a different form of ownership than condominiums. As was discussed above, legal lots of record can be established by the traditional subdivision process or by the alternative process, which involves filing a binding site plan. By requiring the binding site plan, the City was not treating the condominium form of ownership any differently from any other type of ownership, because owners of land wishing to form condominiums are free to obtain legal lots of record under the traditional subdivision process instead of the binding site plan process, if they should prefer the traditional approach to dividing their property into legal lots of record. The point is that any property owner wishing to divide real property into legal lots of record must follow a statutory process. By giving an alternative means of achieving this end to those who wish to form condominiums, the Legislature has not placed any "additional requirement" in violation of RCW 64.34.050(1).

■ Appellants also contend that the binding site plan requirement of RCW 58.17.040(7) does not apply to already-constructed projects such as theirs. This is not correct. Both RCW 58.17.040 and the corresponding city ordinance refer to constructed and to-be-constructed projects. RCW 58.17.040(7) expressly includes already-constructed projects:

The provisions of this chapter do not apply to:

. . . .

(7) Divisions of land into lots or tracts if: . . . (b) the improvements *constructed or to be constructed* thereon are required by the provisions of the binding site plan to be included in one or more condominiums[.]

RCW 58.17.040(7)(b) (emphasis added). Similarly, the corresponding Sedro-Woolley binding site plan ordinance is expressly applicable to the sale of mobile home lots or condominium units in both planned and existing mobile home parks:

Any person . . . who seeks to divide . . . land, or approved mobile home park for purpose of selling, leasing, or transfer of ownership of portions of a planned development, *whether currently constructed or not constructed,* may apply for a binding site plan division . . . in lieu of [filing a subdivision application].

Sedro-Woolley Municipal Code ("SWMC") § 16.28.010(A) (emphasis added). These provisions make it clear that the binding site plan requirement applies to both constructed and not-yet-constructed projects. The case appellants cite in support of their contention, *Ivy Club Investors Ltd. Partnership v. City of Kennewick,* is inapposite, the binding site plan requirement having been met in that case. 40 Wn. App. 524, 525, 699 P.2d 782 (1985). The issue in the *Ivy Club* case was not whether the binding site plan requirement applied to already-constructed projects, but whether the City of Kennewick could impose a park fee on apartments being converted into condominiums five years after construction, where the fee would have been properly imposed under the traditional subdivision laws if the apartments were being newly constructed instead of being converted. Moreover, subsection (7) of RCW 58.17.040 has been substantially amended since the *Ivy Club* opinion was written.

 In sum, because the appellants chose not to proceed under the traditional subdivision process, they are required, under the alternative to that process, to file a binding site plan in order to convert the mobile home park into legal lots of record for sale as condominiums.

## II

 Appellants contend that even if the binding site plan requirement of RCW 58.17.040(7) does apply, it has been met in this case. They first argue that because the City allowed the mobile home park to be built without a subdivision application, the property must have fit under the exemption enumerated at RCW 58.17.070(5). RCW 58-.17.040(5) provides that the subdivision law does not ap-

ply to "division[s] for the purpose of lease[s] when no residential structure other than mobile homes or travel trailers are permitted to be placed upon the land when the city, town, or county has approved a binding site plan[.]" Appellants contend that the fact that the City allowed the mobile home park to be leased to residents demonstrates that the project substantially complied with the binding site plan requirement. The City, however, cites unchallenged testimony of its city planner that a binding site plan has never been filed for the mobile home park. We therefore reject this contention.

Appellants further contend that the binding site plan requirement is satisfied as a matter of law, arguing that under RCW 58.17.040(7), which provides that a binding site plan will be deemed to have been approved by a city if the city issued building and occupancy permits to a project, the binding site plan requirement for the mobile home park was deemed approved by the City when it issued building and occupancy permits for the park. Appellants misconstrue the statute. RCW 58.17.040(7) provides, in pertinent part: "A site plan shall be deemed to have been approved *if the site plan was approved* by a city, town, or county: . . . (ii) in connection with the issuance of building permits or final certificates of occupancy with respect to all of such land[.]" (Emphasis added.) The italicized language clearly demonstrates that, contrary to the appellants' contention, a binding site plan is required to have been approved, and that it is not enough that building permits or certificates of occupancy were issued for a project.

Appellants also contend that the Special Use Permit Agreement issued for the mobile home park in 1989 met all the requirements of a binding site plan, effectively satisfying the binding site plan requirement. We disagree. While the Special Use Permit Agreement, which the Sedro-Woolley City Engineer testified is meant only for the purpose of locating sewer and water lines and other improvements for engineering and repair purposes,

contains some of the items required by a binding site plan, such as location of streets, recreation areas, and utilities, it does not accomplish the division of land into legal lots of record that may be sold on the open market, as does a binding site plan. Furthermore, the Special Use Permit Agreement lacks the prescribed statutory notice set out at RCW 58.17.040(7)(e), as required by RCW 58.17.020(7)(b) and SWMC 16.04.040(A)(2). The Special Use Permit Agreement does not, therefore, meet all the requirements of a binding site plan.

■■ The appellants' final contention is that by enforcing ch. 58.17 RCW, the City violates the state policy of favoring resident-owned mobile home parks, set out at RCW 59.22.010(2): "it is the intent of the legislature, in order to maintain low-cost housing in mobile home parks[,] . . . to encourage and facilitate the conversion of [such] parks to resident ownership[.]" This policy statement had been in place for several years before the Legislature amended ch. 58.17 RCW; the Legislature is, therefore, presumed to have been aware of it when amending the statute. Moreover, requiring persons who desire to convert property into condominiums to divide the property into legal lots of record does not thwart the policy of encouraging resident-owned mobile homes. Instead, it protects the resident owners of those properties. We therefore reject this contention.

Because the binding site plan requirement applies to the appellants and because they have not complied with it, their claims were properly dismissed on summary judgment.

The judgment of the trial court is affirmed.

GROSSE and BECKER, JJ., concur.

Reconsideration denied November 13, 1997.

Review denied at 135 Wn.2d 1002 (1998).