[No. 33072-5-II.   Division Two.   August 8, 2006.]

ABRA PLEMMONS, *Respondent*, v. PIERCE COUNTY ET AL., *Petitioners*.

---

*Robert M. McKenna, Attorney General*, and *Kenneth D. Orcutt, Assistant*; and *Gerald A. Horne, Prosecuting Attorney*, and *Patrick R. Cooper*, for petitioners.

*Darrell L. Cochran* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*), and *Fred Diamondstone* (of *Law Offices of Fred Diamondstone*), for respondent.

*Robert A. Hyde* and *Mathew W. Pile* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1 HUNT, J. — We granted discretionary review of a summary judgment ruling in Abra Plemmons' federal constitutional[1] and state statutory[2] civil rights violations action that the Pierce County Jail's postarraignment, prebail strip search of Plemmons, a nonviolent identity theft victim, was unconstitutional. The County argues that its strip search policy, authorized by RCW 10.79.120, is constitutional as applied to Plemmons because (1) she had been arraigned on a forgery charge, subject to a judicial determination of probable cause, and (2) the search was necessary to promote jail security before placing Plemmons with other jail inmates. Amicus curiae American Civil Liberties Union argues that we need not address the constitutional issue and that, instead, we should construe RCW 10.79.120 as inapplicable to arrestees in custody pending release on bail or personal recognizance. We agree.

---

[1] U.S. CONST. amend. IV.

[2] RCW 10.79.110(1).

¶2 Holding that RCW 10.79.120 generally does not authorize strip searches of persons to be released on personal recognizance or bail, we affirm the trial court's grant of summary judgment to Plemmons on this other ground and vacate the trial court's ruling that Pierce County unconstitutionally applied its strip search policy to Plemmons.

FACTS

I. STRIP SEARCH

¶3 The State charged Abra Plemmons with felony forgery. Plemmons was taken into custody on this charge during a traffic stop in Montana, her state of residence. She posted $10,000 bail and traveled on her own to Washington to appear, with private counsel, in Pierce County Superior Court for arraignment and a bail hearing.

¶4 At the Pierce County Superior Court arraignment and bail hearing, Plemmons asked for release on her personal recognizance because she was a victim of identity theft, she had come to Washington to appear in court of her own volition, and she had already posted $10,000 bail when arrested on this same charge in Montana. The court denied her request, imposed bail of $5,000, and ordered that she be taken into custody.

¶5 The County booked Plemmons at 2:59 PM that same day. Before placing her with the mixed, general population and intake inmates at the County jail, the County conducted an automatic strip search[3] in accordance with its policy[4] based on chapter 10.79 RCW. Plemmons received a bail bond at 4:41 PM, and the jail released her at 7:22 PM.

---

[3] The search includes a one-minute visual body cavity search requiring the inmate to squat and cough, to bend at the waist and spread her buttocks, and to lift her breasts.

[4] The form authorizing Plemmons' strip search indicates that the search was automatically permitted for a postconviction felony commitment. But this information on the form was incorrect: not only was Plemmons not convicted of a felony, but also the County dropped the forgery charge because she was actually a victim, not a perpetrator, of the crime.

¶6 Sometime later, after determining that Plemmons was the innocent victim of identity theft and not a forger, the County dropped the forgery charges against her.

## II. PROCEDURE

¶7 Plemmons sued the County for federal constitutional and state statutory civil rights violations based on its postarraignment strip search performed while she was in custody awaiting release on bail.

¶8 Both parties filed cross motions for summary judgment. In support of her motion, Plemmons submitted portions of Pierce County Corrections Captain Marvin Spencer's deposition, in which he described the County's "automatic" strip search policy at the County jail as follows:

> [A]ny commitment from court results in an automatic strip search. When there's an order from the court to detain somebody, when the court orders the person to be taken into custody after arraignment and they're committed, that fits the category of commitment and, therefore, results in automatic strip search.

Clerk's Papers (CP) at 94.

¶9 A visiting Thurston County Superior Court Judge granted Plemmons' motion for summary judgment, ruling that (1) the County was liable for damages under federal constitutional law and 42 U.S.C. § 1983; (2) the strip search did not violate RCW 10.79.120 and .130; and (3) these two statutes were unconstitutional as applied to Plemmons to the extent they permitted

> the strip search of a person who has been "committed" to jail as a pre-trial detainee for purposes of merely assuring presence at trial, without regard to the nature of the crime charged or other individualized suspicion.

CP at 676-77.

¶10 After the superior court denied reconsideration, the County moved for discretionary review. The superior court granted this motion and entered an order certifying the

issue of whether RCW 10.79.120 and .130 were unconstitutional as applied to Plemmons. We granted discretionary review.

## ANALYSIS

¶11 The issue here is whether persons like Plemmons, in custody subject to conditional release under CrR 3.2 (such as bail), are "committed to incarceration by order of a court" within the meaning of RCW 10.79.120. If so, such persons may be subject to a strip search without a warrant, reasonable individualized suspicion, probable cause, or other exception under RCW 10.79.130 or RCW 10.79.140, which otherwise generally protect persons in jail from warrantless strip searches.

### I. STANDARD OF REVIEW

#### A. Summary Judgment

■■ ¶12 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court.[5] Nonetheless, "an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986).

■ ¶13 Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.[6] The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party.[7]

■■ ¶14 The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual

---

[5] *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[6] CR 56(c).

[7] *Wilson*, 98 Wn.2d at 437.

issues remain, or having its affidavits considered at face value.[8] After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact.[9] The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion.[10]

## B. Statutory Construction

■ ■ ¶15 We review de novo questions of law, which include statutory construction to determine legislative intent.[11] When faced with an unambiguous statute, we derive the legislature's intent from the statute's plain language alone.[12]

■ ¶16 When a statute is ambiguous, however, we will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpretation.[13] " '[A] statute is ambiguous if it can reasonably be interpreted in more than one way.' "[14] When interpreting a statute, we "must ascertain and give effect to the Legislature's intent,"[15] and we will avoid absurd results.[16]

---

[8] *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

[9] *Seven Gables*, 106 Wn.2d at 13.

[10] *Wilson*, 98 Wn.2d at 437.

[11] *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).

[12] *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994).

[13] *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 98 P.3d 463 (2004).

[14] *Yousoufian*, 152 Wn.2d at 433-34 (quoting *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)).

[15] *Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 405, 842 P.2d 938 (1992).

[16] *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

## C. Constitutionality

■■ ■■ ¶17 "A court will presume that a statute is constitutional and it will make every presumption in favor of constitutionality where the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose." *State v. Glas*, 147 Wn.2d 410, 422, 54 P.3d 147 (2002) (plurality opinion). Moreover, courts should limit their analyses to statutory construction and decline to reach the constitutional question. *State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992). We adopt this approach here and resolve the challenged legality of Pierce County's automatic strip search policy without reaching the constitutionality of RCW 10-.79.120.

## II. STATUTORY SCHEME

¶18 The parties agree that Pierce County stripsearched Plemmons as "a person committed to incarceration by order of a court" described in RCW 10.79.120. They disagree, however, about whether RCW 10.79.120 authorized this strip search.

¶19 RCW 10.79.120 provides:

RCW 10.79.130 through 10.79.160 apply to any person in custody at a holding, detention, or local correctional facility, *other than a person committed to incarceration by order of a court*, regardless of whether an arrest warrant or other court order was issued before the person was arrested or otherwise taken into custody unless the court issuing the warrant has determined that the person shall not be released on personal recognizance, bail, or bond. RCW 10.79.130 through 10.79.160 do not apply to a person held for post-conviction incarceration for a criminal offense. The definitions and remedies provided by RCW 10.79.070 and 10.79.110 apply to RCW 10.79.130 through 10.79.160.

(Emphasis added.)

¶20 RCW 10.79.130 establishes the following restrictions for strip searches:

(1) *No person* to whom this section is made applicable by RCW 10.79.120 *may be strip searched without a warrant unless*:

(a) There is a *reasonable suspicion* to believe that a *strip search is necessary* to discover weapons, criminal evidence, contraband, or other thing concealed on the body of the person to be searched, that constitutes a threat to the security of a holding, detention, or local correctional facility;

(b) There is *probable cause* to believe that a *strip search is necessary* to discover other criminal evidence concealed on the body of the person to be searched, but not constituting a threat to facility security; or

(c) There is a *reasonable suspicion* to believe that *a strip search is necessary* to discover a health condition requiring immediate medical attention.

(2) For the purposes of subsection (1) of this section, *a reasonable suspicion is deemed to be present when the person to be searched has been arrested for:*

(a) A *violent offense* as defined in RCW 9.94A.030 or any successor statute;

(b) An offense involving *escape, burglary, or the use of a deadly weapon;* or

(c) An offense involving *possession of a drug* or controlled substance under chapter 69.41, 69.50, or 69.52 RCW or any successor statute.

(Emphasis added.)

¶21 If Plemmons fell within the RCW 10.79.120 category of a "person committed to incarceration by order of a court," then she was not entitled to the protections and restrictions of RCW 10.79.130, and the County could search her without a warrant. If, however, Plemmons was not a "person committed to incarceration by order of a court" under RCW 10.79.120, then the County acted without authority in subjecting her to an automatic, warrantless, strip search.[17] Several rationales support the latter conclusion. We address each in turn.

---

[17] The County argues only that its strip search of Plemmons was authorized under RCW 10.79.120. The County does not argue that Plemmons fell within any of the statutory exceptions set forth in RCW 10.79.130 or .140.

A. Preconviction Release of Accused

¶22 CrR 3.2, entitled "Release of Accused," provides for the conditional release of accused persons subject to such restrictions as the posting of a bond and a cash deposit in order to assure the accused's reappearance for later proceedings. CrR 3.2(b). CrR 3.2(i), entitled "Order for Release," directs, "A court authorizing *the release of the accused* under this rule shall issue an appropriate order containing a statement of the conditions imposed . . . ." (Emphasis added.) This language implies that a person, such as Plemmons, who is taken into custody pending posting of bail, has been ordered "released" subject to certain conditions rather than "committed to incarceration," the prerequisite for a warrantless strip search under RCW 10.79.120, not subject to the restrictions of RCW 10.79.130 and .140.

¶23 The United States Supreme Court provides a similar interpretation of the federal bail statute, 18 U.S.C. § 3142, as applied to a charged defendant awaiting trial:

If, however, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e), the court "shall order the detention of the person" by issuing a "detention order" "direct[ing] that the person be committed to the custody of the Attorney General for confinement in a corrections facility," § 3142(i)(2). Thus, under the language of the Bail Reform Act of 1984, *a defendant suffers "detention" only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, as respondent was, is "released."*

*Reno v. Koray*, 515 U.S. 50, 57, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995) (emphasis added) (citation omitted) (quoting 18 U.S.C. § 3142).

¶24 Thus, it appears that an individual awaiting bail posting has been ordered conditionally "released" rather than "committed to incarceration."[18]

### B. Legislative History

¶25 RCW 10.79.120 is ambiguous because it is unclear whether the phrase "committed to incarceration by order of a court" applies to CrR 3.2 orders of preconviction release on conditions such as bail or personal recognizance. Thus, we may look to legislative history to determine legislative intent. *Baker v. Tri-Mountain Res., Inc.*, 94 Wn. App. 849, 852, 973 P.2d 1078 (1999).

¶26 RCW 10.79.120 is accompanied by a statement of legislative intent:

> It is the intent of the legislature to establish policies regarding the practice of strip searching persons booked into holding, detention, or local correctional facilities. It is the intent of the legislature to *restrict the practice of strip searching and body cavity searching* persons booked into holding, detention, or local correctional facilities *to those situations where such searches are necessary.*

RCW 10.79.060 (emphasis added). This statement does not directly address the specific issue here, but it clearly expresses the legislature's intent to "restrict" strip searches of persons booked into local correctional facilities to "situations where such searches are necessary." RCW 10.79.060.

---

[18] We further note that Pierce County's reading of "committed to incarceration by order of a court" would lead to an absurd result in the following hypothetical: A defendant is arrested on a $50,000 warrant on a Friday evening and taken to the Pierce County Jail, where she is held with a mix of intake and general population inmates. Because the defendant has not appeared before a court, Pierce County may not strip search the defendant unless it can overcome the restrictions of RCW 10.79.130 through .160. On Monday morning, the defendant appears before the court and has bail lowered to $1,000. Under Pierce County's reading of the statute, the defendant can now be strip searched automatically while she is attempting to post bail, even though she has already spent an entire weekend in jail and is now considered a lower threat than when originally apprehended under the arrest warrant.

We will avoid absurd results when interpreting statutes. *J.P.*, 149 Wn.2d at 450. And we follow this rule here.

¶27 The synopsis of the Final Bill Report for RCW 10.79.120 further elucidates the legislature's intent:

> Restrictions are placed on the conduct of strip searches. The restrictions affect which persons in custody may be searched and under what circumstances they may be searched. The restrictions do not apply to persons held for post-conviction supervision. *They do apply to any other person in custody* at a holding, detention or local correctional facility *other than any person not to be released on personal recognizance or bail.*
>
> . . . .
>
> A person arrested for other than a violent offense, a drug offense or an offense involving escape, burglary or the use of a deadly weapon, may be strip searched *only upon an individual determination that reasonable suspicion or probable cause exists.*

1986 FINAL LEGISLATIVE REPORT, 49th Wash. Leg., Reg. Sess., at 39-40 (emphasis added).

¶28 The third sentence of the first paragraph of the above synopsis shows that the legislature intended to exclude pre-conviction detainees, such as Plemmons, from the category of persons "committed to incarceration by order of a court" who can be strip searched without a warrant. Similarly, the second paragraph in the above-quoted synopsis demonstrates that strip searches are not allowed for persons arrested for nonviolent offenses, such as forgery, without "an individual determination that reasonable suspicion or probable cause exists."

¶29 This legislative history demonstrates the legislature's intent to restrict warrantless strip searches of persons, such as Plemmons, arrested for a nonviolent offense, who are to be released on bail before trial or conviction. Plemmons was in custody pending release on bail and, thus, entitled to the protections of RCW 10.79.130 through .160. These protections include a warrant, probable cause, or

individualized reasonable suspicion before being strip searched,[19] none of which was present here.

## CONCLUSION

¶30 We hold that Plemmons did not meet the statutory criteria for a warrantless strip search and, therefore, the County acted without authorization in strip searching her under its automatic strip search policy. Accordingly, we need not address the constitutionality of the statute.

¶31 We affirm the trial court's grant of summary judgment to Plemmons, on alternative ground that the County's automatic strip search policy, under which the County justified strip searching her, fell outside the statutorily authorized limits of RCW 10.79.120, .130, and .140. We vacate the superior court's ruling that RCW 10.79.120 is unconstitutional as applied in this case.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

---

[19] Because Pierce County charged Plemmons with forgery, a nonviolent, nondrug offense, the County at least had to make an individualized determination of reasonable suspicion. Pierce County made no such determination here; rather, it searched Plemmons under its nonindividualized blanket policy.

