[No. 17128-1-III.   Division Three.   April 29, 1999.]

KENT NIELSON, *Appellant,* v. AGRINORTHWEST,
*Respondent.*

David L. Trick; and *Prediletto, Halpin, Cannon, Johnson & Scharnikow, P.S.*, by *William T. Scharnikow*, for appellant.

*Rettig, Osborne, Forgette, O'Donnell, Iller & Adamson*, by *Diehl R. Rettig* and *John P. Raekes*, for respondent.

SWEENEY, J. — Kent Nielson sued AgriNorthwest for religious discrimination and constructive discharge, alleging adverse employment actions because he left the Mormon Church. AgriNorthwest moved for summary judgment. The court concluded that Mr. Nielson's resignation was voluntary, granted summary judgment and denied Mr. Nielson's motion for a continuance to conduct additional discovery. We reverse and remand for trial on the merits.

## FACTS

AgriNorthwest is a farming corporation. Kent Nielson

started as a plant geneticist with its predecessor company in the early 1960s. In 1974, he became director of agricultural research. In 1977, he took over as head of all Idaho operations. In 1978, he was director of agronomy at the company's new headquarters in Pasco.

In 1982, he became vice-president of farm operations, reporting to Martin Wistisen, who reported to the chief executive officer (CEO). In 1989, Mr. Nielson requested a lateral move to area director in Eureka. Around the same time, Mr. Wistisen became CEO. In the fall of 1990, Mr. Nielson and Marion Kurtz were assigned to McNary Farms to improve the yield and quality of potatoes grown there.

Between 1989 and 1994, Mr. Wistisen issued a series of written reprimands for deficient performance and Mr. Nielson was demoted. Effective April 30, 1995, Mr. Nielson resigned. He started the next day with another farming company.

Mr. Nielson filed a complaint in September 1996, alleging discrimination and constructive discharge in violation of RCW 49.60.180.[1] AgriNorthwest moved for summary judgment. Mr. Nielson moved to continue the summary judgment to conduct more discovery. A hearing was held on November 13, 1997, on both motions.

In support of his discrimination claim, Mr. Nielson, a lifelong member of the Mormon Church until 1987, presented evidence that a sequence of adverse employment actions coincided with the steps of his irrevocable severance from the Mormon Church. He alleged a causal relationship. In sworn affidavits and depositions, he presented evidence that:

- In 1985, Mr. Nielson started an affair with his secretary. He continued the affair and was excommunicated from the Mormon Church in 1987. Within a year of his

---

[1]RCW 49.60.180 makes it unlawful to refuse to hire, to discharge or to discriminate against in conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person.

excommunication, Mr. Nielson and his wife, Marialice, also a member of the Mormon Church, separated. They divorced in 1994. Sometime after the excommunication, Mr. Wistisen held a meeting at his home for all of the area directors and some other company officers, but not Mr. Nielson. They discussed Mr. Nielson's affair and an unrelated sexual harassment allegation. Present at the meeting was Marialice's brother, Terrel Tovey, who was a unit manager with AgriNorthwest and a stake president for the Mormon Church. No one ever talked to Mr. Nielson about this meeting. No official action was taken.

- In 1992, Mr. Nielson began keeping company with his current wife, Hildred, a Seventh Day Adventist. Hildred had worked at AgriNorthwest from 1984 to 1990, but the couple had no social involvement during that time. In August 1992, Mr. Nielson asked Mr. Wistisen, then CEO, if he could bring Hildred to the company picnic. Mr. Wistisen refused because Mr. Nielson and Hildred were not married. In November 1992, Mr. Nielson received his first official reprimand for unacceptable levels of wind erosion and weeds at McNary.

- In 1993, Mr. Nielson began attending the Seventh Day Adventist Church with Hildred. In February 1994, AgriNorthwest terminated health insurance coverage for Marialice because the Nielsons were living apart. Mr. Nielson deposed that this policy was applied solely to him. Mr. Wistisen deposed that he did not know Hildred was a Seventh Day Adventist or that Mr. Nielson attended that church.

- In September 1994, Mr. Nielson announced his engagement to Hildred. On September 26, 1994, he was demoted from area director to farm unit manager, with a concomitant loss of money, power and prestige. A fellow employee, Jeff Mason, was demoted at around the same time after being excommunicated from the Mormon Church for adultery. Mr. Mason deposed that Mr. Wistisen told him it was because he was living with

someone out of wedlock. Mr. Wistisen said it was for lying about it.

- In November 1994, Mr. Nielson married Hildred. On December 13, 1994, he received a second written warning about poor performance.

- In March 1995, in his new position as unit farm manager, Mr. Nielson had a conversation with Warren Mason who had replaced him as area director. Mr. Mason told Mr. Nielson it was difficult having an employee so thoroughly disliked by his supervisor. Finding the situation intolerable and seeing the writing on the wall, Mr. Nielson found another job.

Mr. Kurtz deposed that, between 1991 and 1994, wind erosion and weeds were minimal and no worse than at any other farm in the region; that in 1992 or 1993 the first-rate quality and quantity of McNary potatoes were officially recognized by the company; and that responsibility for the management of McNary Farms was Mr. Kurtz's. James Larson deposed that the McNary fields were in terrible shape when he took them over in 1995.

In its memorandum opinion, the court found no remaining issues of material fact and concluded that this court's decision in *Molsness v. City of Walla Walla*[2] was controlling. The court granted summary judgment to AgriNorthwest and denied Mr. Nielson a continuance to obtain additional AgriNorthwest records to bolster his claim of pretext.

Mr. Nielson appeals both rulings.

## DISCUSSION

■■ *Standard of review*: In reviewing a summary judgment, we engage in the same inquiry as did the superior court. *Molsness*, 84 Wn. App. at 397. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2] 84 Wn. App. 393, 928 P.2d 1108 (1996).

any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Molsness*, 84 Wn. App. at 397. The burden is on AgriNorthwest to establish its right to judgment as a matter of law, but Mr. Nielson must produce more than mere speculation and unsupported assertions to defeat the motion. *Higgins v. Stafford*, 123 Wn.2d 160, 169, 866 P.2d 31 (1994); *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359-61, 753 P.2d 517 (1988).

Did Mr. Nielson resign voluntarily as a matter of law?

■ *Molsness* holds that an employee who is threatened with termination for cause and who chooses to resign instead is presumed to have resigned voluntarily. The decision, however, makes clear that this result is conditional on the existence of good cause in fact for termination. The employee in *Molsness* never challenged the employer's showing of good cause for the termination and never alleged discrimination. The case stands for no more than that giving an unsatisfactory employee the opportunity to resign instead of being dismissed does not constitute constructive discharge. *Molsness*, 84 Wn. App. at 398-99.

Here, Mr. Nielson presented voluminous evidence that the employer's allegations of unsatisfactory performance were pretextual. He presented documentation and supporting evidence of discrimination. *Molsness* does not bar this cause of action because there are genuine issues of material fact.

■ *Resignation is not dispositive*: In *Molsness*, the employee's supervisor told him his performance was unsatisfactory and asked for his resignation by a certain date, or he would be fired. The employee resigned and sued for constructive discharge. This court held that, in those circumstances, a resignation submitted to avoid threatened termination for cause is voluntary and does not support a claim of constructive discharge. *Molsness*, 84 Wn. App. at 398. But the decision recognizes that a resignation prompted by an employer's oppressive actions is not volun-

tary. And the presumption of voluntariness is rebutted by showing there was no good cause. *Id.* at 398-99.

Unlike Mr. Molsness, Mr. Nielson did not resign in the face of a threatened termination for cause. Unlike Mr. Molsness, Mr. Nielson presented evidence of discrimination which made his position with the company more and more untenable. Mr. Molsness did not present evidence disputing the employer's allegations of deficient performance. *Id.* at 399.

*Molsness* does not hold that anyone who resigns has no cause of action for constructive discharge or employment discrimination. It merely holds that the employee must show more than that he was told to resign or be fired. *Id.* at 398-99. Mr. Nielson has done this.

■ *Prima facie case of religious discrimination*: Recognizing that his facts do not fit the typical Title VII[3] scenario, Mr. Nielson suggests the "hostile work environment" as a suitable analogy for a prima facie case of religious discrimination. The federal courts have resolved this issue differently, using a "reverse discrimination" model. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033 (10th Cir. 1993); *Lawrence v. Mars, Inc.*, 955 F.2d 902 (4th Cir.), *cert. denied*, 506 U.S. 823 (1992). Where discrimination does not target a particular religion, but is against an employee who does not share a particular religious belief, the employee must show:

(1) that he was subjected to some adverse employment action;

(2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and

(3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.

*Shapolia*, 992 F.2d at 1038.

---

[3]Section 703 of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241, 253 (1964) (as amended, 42 U.S.C. § 2000e).

The plaintiff is then entitled to the benefit of the *McDonnell*[4] burden-shifting scheme and its presumptions. The plaintiff need only present a scenario that on its face suggests the defendant more likely than not discriminated. *Lawrence*, 955 F.2d at 905-06.

Mr. Nielson presented sufficient evidence to shift the burden to the employer to refute his allegations. This creates a genuine issue of material fact.

■ *Prima facie case of constructive discharge*: To establish constructive discharge, the employee must first show a deliberate act by the employer that made his working conditions so intolerable that a reasonable person would have felt compelled to resign. *Sneed v. Barna*, 80 Wn. App. 843, 849, 912 P.2d 1035, *review denied*, 129 Wn.2d 1023 (1996). It is the act, not the result, that must be deliberate. Demotion may constitute constructive discharge. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 637, 700 P.2d 338 (1985). Whether or not conditions are intolerable is a question of fact. *Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 261-62, 778 P.2d 1031 (1989). The "intolerable" element can be shown by aggravated circumstances or a pattern of conduct. *Sneed*, 80 Wn. App. at 850 (citing *Wunderly v. S.C. Johnson & Son, Inc.*, 828 F. Supp. 801, 806 (D. Or. 1993)).

Second, he must show he resigned because of the conditions and not for some other reason. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 408, 693 P.2d 708 (1985) (citing *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir. 1982)).

Here, Mr. Nielson documented a pattern of adverse treatment. There are disputed facts concerning the reasons underlying the actions of both AgriNorthwest and Mr. Nielson.

Reversed and remanded for trial on the merits.

If Mr. Nielson prevails on the merits in the trial court,

---

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

he is entitled to the costs of this appeal including reasonable attorney fees. RCW 49.60.030(2); RAP 18(1)(i).

SCHULTHEIS, C.J., and KATO, J., concur.

Review denied at 138 Wn.2d 1023 (1999).