85 P.3d 959 (2004)
Mark TRAVIS, Appellant,
v.
TACOMA PUBLIC SCHOOL DISTRICT, a municipal corporation and a subdivision of the State of Washington, Respondent.
No. 30198-9-II.
Court of Appeals of Washington, Division 2.
March 9, 2004.
*961 Michael John Kelly, Tyler K. Firkins, Van Siclen Stocks & Firkins, Auburn, WA, for Appellant.
Phillip D. Noble, Helsell Fetterman LLP, Seattle, WA, for Respondent.
*960 ARMSTRONG, J.
Mark Travis, a second-year provisional teacher in the Tacoma School District's Learning Assistance Program, suffered from various mental and physical health problems. He resigned after receiving two unsatisfactory evaluations and notice that the District was not renewing his contract. After attempting to rescind his resignation, Travis filed a complaint for injunctive relief in superior court and a claim for damages with the District. When the superior court denied his motion for an injunction, it also dismissed his underlying substantive statutory and discrimination claims on the District's summary judgment motion. The superior court then denied Travis's motion for reconsideration, his motion to amend his complaint to add a claim for wrongful termination in violation of public policy, and his motion for monetary damages on his other claims. Holding that Travis waived any claim for wrongful termination by voluntarily resigning, we affirm.

FACTS
The Tacoma Public School District hired Mark Travis to teach in its Learning Assistance Program (LAP) in August 2000. Travis had suffered brain hemorrhages in 1994 and 1998. Though eventually some symptoms such as loss of balance and vision, confusion, dizziness, and headaches partially resolved, these hemorrhages left Travis with loss of peripheral vision, some unexplained cognitive impairments, and fatigue. Travis *962 also suffered from depression as a result of his continuing and permanent disabilities.
The District assigned Travis to team teach with Silvia Stocks, who Travis claims was unsupportive and harassed him. Robert Arial, the assistant principal at Gray Middle School, gave Travis satisfactory evaluations in every category but noted that while "[Travis] has struggled this year some with classroom management and mastering the fundamentals of teaching ... [h]e is making satisfactory progress as a first year teacher." Clerk's Papers (CP) at 42-45.
The District rehired Travis and assigned him to his own LAP classroom. Travis had five class periods with six to eight students per class. The District uses a specific reading curriculum in the LAP program called "Soar to Success" or "SOAR." CP at 143. SOAR specifies an instructional plan that the teacher must implement in a consistent manner. The teacher's manual outlines and explains daily lesson plans.
Travis did not inform the District of his disability upon being hired or during his first year of teaching. But during a conversation at the beginning of his second year that concerned separating Travis and Stocks, Travis told principal Paul Rawlings that he had a disability, including Attention Deficit Disorder.[1] When Rawlings suggested they should sit down and discuss the matter with Stocks and another teacher, Travis told him that he did not want them to have any information about his disability. According to Travis, Rawlings dismissed his condition as trivial, stating, "I have a disability, I am fat," and told him to continue with the Employee Assistance Program for his depression. CP at 34. Travis claims the District advised him that his contract could be nonrenewed if he had two unsatisfactory categories on two evaluations.
On November 14, 2001, Rawlings observed Travis teach and found several areas of deficient performance and poor classroom management. For example, Rawlings noted that "[Travis] tries to implement the instructional strategies of the SOAR program. However his lesson design and activities supplied to the students do not allow this to happen. His instruction is weak and his ability to follow the curriculum as given is not being done." CP at 147.
The District's Americans With Disabilities Act (ADA) officer, Marion Leach, received an inquiry from Travis regarding accommodations in November 2001. The District responded on November 29, by sending Travis a request for accommodation form, which sought information on his disability. Travis never responded.
Shortly after the first evaluation, Travis scheduled a meeting with Rawlings and Jan Miller, the Director of Certificated Employees, to discuss his options. Travis asserts that Miller told him he should resign immediately to avoid nonrenewal and, when he did not, Miller implied that she was disappointed, stating that she respected people who resigned. Rawlings asserts that he and Miller explained to Travis that it would be advantageous for him to resign rather than have his contract nonrenewed for poor performance.
Travis claims that Rawlings frequently told him the evaluation process would stop only if Travis informed human resources that he intended to resign. Travis perceived this as a continual threat. Rawlings explains that he talked with Travis only about whether, because of his negative evaluations, it might be advantageous for Travis to voluntarily resign to care for his ailing wife.
On January 25, 2002, Rawlings reevaluated Travis's teaching, again finding several deficiencies. Because of seizures and difficulty concentrating, Travis's doctor ordered him to take a five-week medical leave of absence from the end of March until May 1.
On April 16, and April 30, 2002, the District's ADA office sent Travis additional accommodation request forms seeking information. When Travis failed to respond, the District informed him it was closing its file, but he could contact the District if he needed an accommodation in the future.
On May 8, Travis received a letter from district superintendent James Shoemake informing him that the District was not renewing *963 his contract and notifying him of his right to request reconsideration under RCW 28A.405.220. Travis requested reconsideration and met with Shoemake on May 22. At this meeting, Shoemake informed Travis that he could still resign and advised him to do so because neither Shoemake nor the Board of Education had overturned a nonrenewal in Shoemake's six years as superintendent. The same day, Travis submitted a letter of resignation specifying that his last day of work would be June 20, with an effective date of August 31. On June 11, Travis finally returned one of the District's request-for-accommodation forms.
At a regular meeting on June 13, the District's Board of Directors accepted Travis's resignation. The letter informing Travis of this acceptance stated an effective date of June 20. On July 12, Travis attempted to rescind his resignation through his attorney.
On August 20, Travis filed a complaint for injunctive relief in Pierce County Superior Court. On October 15, he filed his claim for damages with the District and, on December 18, he filed his motion for injunctive relief. The District opposed the motion and moved for summary judgment, arguing that as a matter of law, Travis had no basis for relief on any of his claims.
On February 14, 2003, the superior court denied Travis's motion for injunctive relief, granted the District's motion for summary judgment, and dismissed Travis's substantive claims against the District with prejudice.
On February 24, Travis moved for reconsideration and to amend his complaint to add additional claims. The additional claim relevant to this appeal is Travis's wrongful-termination-in-violation-of-public-policy claim. The court denied these motions.

ANALYSIS

I. Travis's Resignation
The District argues that Travis's claims are moot, claiming that Travis voluntarily resigned on May 22, 2002, the Board of Directors accepted his resignation, and that his attorney's later attempt to rescind was ineffective because the Board had already accepted Travis's resignation.
Travis responds that under the "mirror image rule" of contract formation, the District's acceptance was really an unaccepted counteroffer because it changed a material termthe effective date of Travis's resignation. Reply Br. of App. at 1. Alternatively, Travis argues, the District actually accepted Travis's offer in which the effective date was August 31, and therefore this offer was not in effect when it was withdrawn.
Travis submitted his resignation on May 22, 2002, after his meeting with Shoemake. This resignation specified June 20, 2002, as Travis's last day of work, effective on August 31, 2002. The District's Board of Directors accepted Travis's resignation on June 13, informing Travis by letter that "the Board of Directors accepted your resignation, effective June 20, 2002."[2] CP at 90. Travis attempted to rescind this resignation through his attorney on July 12, 2002.
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court considers all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. The court should grant the motion only if, from *964 all the evidence, reasonable persons could reach but one conclusion. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
Usually, a purported acceptance that changes the terms of the offer in any material respect operates only as a counteroffer and does not form a contract. Sea-Van Inv. Assoc. v. Hamilton, 125 Wash.2d 120, 126, 881 P.2d 1035 (1994) (citing Roslyn v. Paul E. Hughes Constr. Co., 19 Wash.App. 59, 63, 573 P.2d 385 (1978)). But "[w]hat constitutes a material variation is dependent upon the particular facts of each case." Sea-Van, 125 Wash.2d at 126, 881 P.2d 1035 (citing N. W. Television Club, Inc. v. Gross Seattle, Inc., 96 Wash.2d 973, 980-81, 640 P.2d 710 (1981)).
Here, the difference between the June 20 and August 31 effective dates is not material because Travis's last work day was June 20 and his contract was not going to be renewed. Travis does not argue and the record does not show that the effective date differences had any effect on Travis's work or pay. Whether his resignation was effective June 20 or August 31 is, as far as the record shows, an immaterial variation. We hold that the District accepted all the material terms of Travis's offer to resign.
But Travis argues that he rescinded his offer to resign before its effective date, August 31. No Washington decision addresses whether a public school provisional teacher can rescind a resignation before its effective date but after the school board has accepted it. Decisions from other states suggest that a teacher cannot rescind a resignation under these circumstances. A teacher's tendered resignation is subject to withdrawal until accepted by the board with which the employment contract exists. Nuzum v. Bd. of Educ. of Sch. Dist. of Arnold, 227 Neb. 387, 391, 417 N.W.2d 779 (1988); Hart v. Sch. Bd. of Wakulla County, 340 So.2d 121, 122 (Fl. App.1976); see also Braught v. Bd. of Educ. of Mount Prospect Pub. Sch. Dist. No. 57, 136 Ill.App.3d 486, 483 N.E.2d 623, 91 Ill. Dec. 277 (1985) (tenured teacher's resignation ineffective where board had impliedly accepted the resignation by hiring a replacement).
In Armistead v. State Personnel Board, 22 Cal.3d 198, 201, 583 P.2d 744, 149 Cal.Rptr. 1 (1978), the California Supreme Court held that absent valid enactments to the contrary, a public employee could withdraw a resignation if he or she did so (1) before its effective date, (2) before it is accepted, and (3) before the appointing power acts in reliance on the resignation. Applying this test to a teacher's resignation, the California Court of Appeals concluded, "Armistead unequivocally establishes that the test is to be read so as to make withdrawal ineffectual if any one of the three events has occurred." Am. Fed'n of Teachers v. Bd. of Educ. ., 107 Cal.App.3d 829, 840, 166 Cal. Rptr. 89 (1980).
We agree with the Armistead reasoning. Thus, assuming Travis's effective date was August 31, his attempt to rescind came too late because the Board had already accepted his offer. Moreover, this reasoning is consistent with contract formation principles. Travis's offer was accepted by the Board on June 13. Although the contract contemplated at least part performance on August 31, it was fully formed and binding as of June 13, not the later date of August 31.
Finally, Travis contends that his resignation was coerced and involuntary.
An employee's resignation is presumed voluntary and the employee bears the burden of rebutting this presumption. Molsness v. City of Walla Walla, 84 Wash.App. 393, 398, 928 P.2d 1108 (1996) (citations omitted). The presumption applies even where an employee is threatened with termination for cause and resigns instead, provided there is good cause for termination. Nielson v. AgriNorthwest, 95 Wash.App. 571, 576, 977 P.2d 613 (1999). Thus, a resignation is not rendered involuntary because an employee tenders his resignation to avoid termination for cause. Molsness, 84 Wash.App. at 399, 928 P.2d 1108. And the employee's subjective belief that he had no choice but to resign is irrelevant. Molsness, 84 Wash.App. at 399, 928 P.2d 1108. But the withdrawal of a resignation or an attempt to do so may vitiate the element of voluntariness. Micone v. Town of Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 642, 722 P.2d 1369 (1986) *965 (citing Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983)).
In his declaration, Travis claims that Shoemake coerced him into signing a letter of resignation. Travis asserts that Shoemake advised him to resign because neither he nor the Board of Education had ever overturned a nonrenewal. Travis further asserts that Shoemake told him there was nothing in his file that showed any satisfactory evaluations during Travis's first year of teaching.
Travis fails to overcome the presumption that he voluntarily resigned. Assuming that Shoemake misrepresented Travis's first year evaluations, Travis does not dispute that he received two unsatisfactory evaluations in his second year. And these evaluations formed the basis of the District's discontent with Travis, prompting the District to notify Travis that his contract would not be renewed. Thus, while Travis may have subjectively believed he had to resign to avoid a nonrenewal, objectively he had the choice to remain in his current position and ask Shoemake to reconsider. RCW 28A.405.220; see Molsness, 84 Wash.App. at 399, 928 P.2d 1108. And because of his second year of unsatisfactory evaluations, the District had valid reasons to nonrenew his contract.
Travis also claims that he resigned because the District failed to work with him to accommodate his disability. Travis first contacted the District about possible accommodations in November 2001. The District sent Travis a request for information on November 29. But Travis never responded. The District sent two more requests on April 16 and April 30, 2002. Travis still failed to respond, and the District advised him on May 20 that it was closing its file but that he could contact the District if he needed a future accommodation. Travis finally returned a request form on June 11, 20 days after he submitted his resignation. Given this history, no reasonable fact-finder could believe the District coerced Travis into resigning by failing to accommodate his disability.
We hold that Travis waived any claim for wrongful termination by voluntarily resigning his teaching position with the Tacoma School District. Accordingly, we need not address his various wrongful termination claims.

II. Dismissal of Substantive Claims on Summary Judgment; Denial of Leave to Amend
Travis argues that the trial court erred when it denied his motion for injunctive relief and dismissed his entire case. The District frames this issue as whether the trial court abused its discretion when it denied Travis's motion to amend his complaint to add a wrongful-termination-in-violation-of-public-policy claim and damages for this and the other substantive claims that the court had dismissed on summary judgment.
Travis argues that because RCW 4.96.020(4)[3] required him to wait 60 days from the time he first presented and filed his claim with the District, until he filed his claim for damages, the court should not have dismissed his substantive claims before he filed a complaint for damages in Pierce County Superior Court.
A party seeking relief through a temporary injunction must show: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) conduct that has or will result in actual and substantial injury. Rabon v. City of Seattle, 135 Wash.2d 278, 284, 957 P.2d 621 (1998) (citing Tyler Pipe, Ind., Inc. v. Dep't of Revenue, 96 Wash.2d 785, 792, 638 P.2d 1213 (1982)). When deciding if a party has a clear legal or equitable right, the court examines the likelihood that the moving party will prevail on the merits. Rabon, 135 Wash.2d at 285, 957 P.2d 621 (citing Washington Fed'n of State Employees, Council 28 v. State, 99 Wash.2d 878, 888, 665 P.2d 1337 (1983)). And while the trial court must reach the merits of purely legal issues for purposes of deciding whether to grant or deny the preliminary injunction, it may not adjudicate the ultimate merits of the case. Rabon, 135 Wash.2d at 286, 957 P.2d 621.
When a pleading may not be amended as a matter of course, it may be amended only by leave of court or by written *966 consent of the adverse party; leave shall be freely given when justice so requires. CR 15(a). We review the denial of a request to amend pleadings for an abuse of discretion after the pleadings have closed. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 142, 937 P.2d 154 (1997). A trial court abuses its discretion only if its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. Boeing Co. v. Heidy, 147 Wash.2d 78, 90, 51 P.3d 793 (2002) (citation omitted). And "[a] trial court may consider whether the new claim is futile or untimely." Ino Ino, 132 Wash.2d at 142, 937 P.2d 154 (citing MacLean v. First N.W. Indus., Inc., 96 Wash.2d 338, 345, 635 P.2d 683 (1981)); Doyle v. Planned Parenthood of Seattle-King County, Inc., 31 Wash.App. 126, 130-31, 639 P.2d 240 (1982).
Travis concedes that his legal theories before the court at the motion for injunctive relief were essentially the same as those he proposed in his motion to amend. His proposed amended claims differed only in asking for money damages and asserting a claim for wrongful-termination-in-violation-of-public policy. In addition, Travis did not object to the summary judgment procedure; nor did he ask for time to conduct discovery before the summary judgment. And he did not propose his amendments until after the court had ruled on the summary judgment. In short, Travis willingly engaged in the summary judgment battle, the court had his essential theories before it, and he does not demonstrate prejudice for lack of discovery. Thus, even if we assume the court should have allowed him to file his formal complaint for damages, Travis has not shown that the failure prejudiced him. Finally, because we have held that Travis waived any claims for wrongful termination by resigning, he cannot demonstrate prejudice as to his termination in violation of public policy claim. Accordingly, the grant of summary judgment for the District was proper.
Affirmed.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] The exact date of this conversation is not apparent from the record.
[2] Travis had specified June 20 as his last day of work.
[3] The District incorrectly cites RCW 4.96.010.