# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VICTOR CELIS, a married man, | No. 46543-4-II |
| Appellant, | |
| v. | |
| CITY OF LAKEWOOD, a municipal corporation; CITY OF LAKEWOOD POLICE DEPARTMENT, a political subdivision; BRET FARRER and CINDY FARRER, individually and as Chief of Police, and as the marital community; MIKE ZARO and DEBORAH ZARO, individually and as Assistant Chief of Police, and as the marital community, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Victor Celis, a former police officer with the City of Lakewood Police Department (LPD), appeals the Pierce County Superior Court's grant of summary judgment in favor of respondents who we collectively refer to as "Lakewood," except to indicate when the parties act in their individual capacities. Celis sued for wrongful discharge based on discrimination. He argues that the court erred when it dismissed his claim because his resignation was not voluntary and he presented evidence of discrimination that created a genuine dispute of material fact. Because we hold that Celis voluntarily resigned, we need not address his other arguments. We affirm the trial court.

FACTS

In the early morning of October 10, 2010, Victor Celis and his wife, Adrienne Celis, were at Oktoberfest in Leavenworth, Washington. Chelan County Sheriff's deputies first became aware of Celis when Sergeant Mike Harris heard the sound of breaking glass. Several deputies witnessed Celis kicking the broken glass into the street. Shortly thereafter, people on the street alerted deputies to a fight. Harris, Deputy Sean Duke, and Deputy Jeremy Mannin approached Celis and another man who were arguing and separated them. The man told Harris that he and others attempted to intercede between Celis and his wife because Celis yelled and cursed at her after breaking two Oktoberfest beer steins on the ground. Celis stated the men harassed his wife and he was defending her.

When Duke asked Celis for identification, Celis displayed his LPD badge, which he wore on a chain around his neck. Celis denied breaking the beer steins and, instead of providing identification, again showed his badge to Duke. Celis also told Duke he was a Lakewood Police Officer. Celis eventually provided identification but continued to be otherwise uncooperative.

The deputies attempted to separate Celis and his wife so they could speak to them individually; however, Celis interfered by stepping between his wife and Harris and saying, "You are NOT talking to my wife." Clerk's Papers (CP) at 297. Subsequently, the deputies spoke with Celis's wife and found no physical evidence of violence. She told them Celis had become upset when they got separated from friends and could not get back to where they were staying; she wanted to return with Celis. Celis continued to be verbally aggressive and reprimanded the deputies for letting the other men leave the area. When the deputies tried to speak with Celis about the broken beer steins and what occurred, he remained uncooperative, disrespectful, and

aggressive. Celis told the deputies he should "Whoop all of your asses" and "Just wait until you all come over to the Westside, you will be given the same treatment." CP at 291, 300.

At the conclusion of the investigation, Celis and his wife remained in the area until two private security officers on the scene offered to give them a ride to where they were staying. While waiting to be picked up, Celis made several comments in a derogatory tone, and with an aggressive look, to Sergeant Jeff Middleton, the duty supervisor, including, "Am I free to leave Sergeant?" and, "Is that all Sarge, anything else Sarge and can I go now Sarge." CP at 297, 301. According to the two security officers who drove Celis and his wife, Celis thought the ride was from a taxi and tried to tip the officers when he and his wife exited the car.

Following these events, Sergeant John Unfred led an investigation to determine if Celis violated the LPD code of conduct. Unfred talked to Harris, who said his deputies gave Celis extra latitude because the LPD had recently suffered the loss of four officers. He said that if Celis had been a civilian, he would have been arrested for disorderly conduct. Unfred also learned that on October 10, prior to the events which led to his investigation, Celis contacted a security officer inside the "Festhall." CP at 290. Initially, Celis offered the man tips on becoming an officer. Later, after being cut off from the bars because of his intoxication level, Celis became aggressive, slapped his wristband into the security officer's hand, and said to the officer, "You're a dick." CP at 290. Several hours later, when leaving, Celis walked by the security officer, reached out his hand, pulled it away, and said, "You're a dick." CP at 291.

The investigation sustained both allegations against Celis for violations of personal conduct (rudeness and threatening behavior toward the security officers and deputies) and identification/badges (displaying his badge not during the performance of his duty). Assistant Chief Mike Zaro considered the facts collected by Unfred and made a recommendation to Chief

3

Bret Farrar who made a final determination on the findings and recommended termination as the disposition. Only the City Manager has the authority to terminate a LPD officer.[1] A copy of the investigation, with the recommendation, was provided to Celis.

Celis attended a pre-termination, *LoudermillI*,[2] hearing with his union representative, Officer Bell. At the hearing, Celis presented a statement accepting responsibility. In a later deposition taken in anticipation of this suit, Celis said, "I had taken full responsibility for the incident and agreed that it was my responsibility, and that I was going to be punished for it." CP at 208. Farrar did not believe Celis truly apologized or took responsibility and said, "I don't think he was expressing true remorse. I think he was telling me what he thought I wanted to hear and there was nothing behind it." CP at 513. After the hearing, Bell phoned Celis to advise him that he believed Celis would be terminated and that if he wanted to preserve his commission, Celis should resign. Bell told Celis that if he waited to be terminated, he might lose his police career entirely. Within two days of the *Loudermill* hearing, Celis resigned. Celis received a memorandum from LPD stating it would not "proactively seek revocation of" his commission. CP at 353.

Celis does not dispute any of the events of the night in Leavenworth because he admits he was too drunk to remember. He does not dispute that he resigned before he received actual discipline or termination. Celis also does not dispute that his actions in Leavenworth warranted

---

[1] There are some passages in the record that indicate the police chief could also terminate an officer. In light of our disposition of the issues and because it is not germane to our holding, we need not settle this factual dispute.

[2] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

discipline. On the other hand, Celis disputes that his conduct warranted termination and that he did not violate the badge policy because identifying oneself as an officer is an acceptable practice. Celis filed a lawsuit against Lakewood alleging wrongful termination based on race. Lakewood then filed a motion for summary judgment. The trial court heard argument and granted Lakewood's summary judgment motion. Celis appeals.

## ANALYSIS

### I. WRONGFUL TERMINATION

Celis assigns error to the trial court granting summary judgment because Celis established genuine issues of material fact existed on the discrimination claim and because his resignation was not voluntary. A resignation is presumed voluntary and Celis has not met his burden to rebut this presumption. *See Molsness v. City of Walla Walla*, 84 Wn. App. 393, 398, 928 P.2d 1108 (1996).

#### A. STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if, viewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute.

*Atherton*, 115 Wn.2d at 516. "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. In opposing summary judgment, a party may not rely merely on the allegations in its pleadings, but must set forth specific facts showing that genuine issues of material fact exist. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225–26, 770 P.2d 182 (1989). "In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). If the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

B.    VOLUNTARY RESIGNATION

Celis argues that he established a genuine dispute of material fact by presenting evidence he had "no other choice" than to resign. Br. of Appellant at 24. We disagree. A resignation is not rendered involuntary because the employee resigns to avoid termination.

An employee's resignation is presumed voluntary and the employee bears the burden of rebutting this presumption. *Molsness*, 84 Wn. App. at 398. The presumption applies even where an employee is threatened with termination for cause and resigns instead, provided there is good cause for termination. *Nielson v. AgriNorthwest*, 95 Wn. App. 571, 576, 977 P.2d 613 (1999) (citing *Molsness*, 84 Wn. App. at 398-99). The court applies an objective standard and the

6

employee's subjective belief that he had no choice but to resign is irrelevant. *Travis v. Tacoma Pub. Sch. Dist.*, 120 Wn. App. 542, 551, 85 P.3d 959 (2004).

When an employee resigns and then claims wrongful discharge, the trial court first evaluates voluntariness, asking whether the employee was unlawfully forced to quit, or constructively discharged. *Molsness*, 84 Wn. App. at 398-99; *see also Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 261, 778 P.2d 1031 (1989). "'The element of voluntariness is vitiated only when the resignation is submitted under duress brought on by Government action.'" *Molsness*, 84 Wn. App. at 398 (quoting *Christie v. United States*, 518 F.2d 584, 587-88 (Ct. Cl. 1975)).

C.      NO CONSTRUCTIVE DISCHARGE

"Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable thereby forcing the employee to resign." *Micone v. Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 643, 722 P.2d 1369 (1986). An employee alleging constructive discharge bears the burden of introducing evidence to rebut the presumption that a resignation is voluntary. *Molsness*, 84 Wn. App. at 398. Washington is an "at-will" state, meaning that in order to prevail on a claim of constructive discharge, a plaintiff must plead and prove that he was discharged in violation of a recognized public policy. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 238-39, 35 P.3d 1158 (2001).

Celis has not met his burden to rebut the presumption that he voluntarily resigned. He did not provide evidence to show that his working conditions were intolerable and that his discharge was unlawful. Celis argues that he presented evidence through deposition testimony that Zaro ignored his complaints about racial jokes. Celis offered his own, unsure memory of two occasions when a coworker allegedly made a racial joke to him in front of Zaro. Celis stated that after the coworker made the racial joke, Celis said to Zaro, "[D]id you hear that?" and "I want to make a

7

complaint" to which Zaro responded something along the lines of, "[I] didn't hear anything." CP at 220-21, 223. Celis stated that when he addressed this issue with Zaro, he "think[s]" he spoke to Zaro in a "matter of fact, conversational" tone and he never contacted Zaro about it again. CP at 220. However, two of Celis's coworkers provided written statements that Celis makes racial jokes with them with some regularity. Celis stated that he had no reason to believe Farrar held animus against him for being Hispanic, except that he recommended termination. According to Celis, neither Zaro nor Farrar ever made any comments that led Celis to believe they were hostile toward Hispanic people. Accordingly, Celis cannot demonstrate any unlawful constructive discharge occurred.

After attending his *Loudermill* hearing, Celis received a phone call from his union representative, Bell, who advised him to resign if he wanted to preserve his commission. Bell further told Celis that if he waited to be terminated, he might lose his police career entirely. Within two days Celis resigned. Several of Celis's actions qualified as serious misconduct for which termination was appropriate. Good cause for termination existed. Celis does not dispute that he voluntarily resigned to avoid the possibility of termination and to preserve his commission. We hold that Celis resigned voluntarily and not under duress brought on by Government action.

Celis waived his wrongful termination claim by voluntarily resigning. He does not dispute that he voluntarily resigned from the LPD before a final decision on discipline or termination occurred. Celis has not established that a genuine dispute of material fact exists relating to his resignation. Lakewood was entitled to judgment as a matter of law.

We affirm the trial court's order granting summary judgment.[3]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.

---

[3] The parties correctly conceded at oral argument that we need not address any other issues by holding Celis voluntarily resigned.