# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SAVE THE DAVIS-MEEKER GARRY OAK, | No. 58881-1-II |
| Appellant, | |
| v. | |
| DEBBIE SULLIVAN, in her capacity of Mayor of Tumwater, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J.—At the center of this case is a 400-year-old Garry oak tree, known as the Davis Meeker Garry Oak Tree. The tree is located in Tumwater, Washington, and is listed on the city's historical register as historic property. In 2023, a limb fell from the tree, causing concern and prompting Mayor Debbie Sullivan to commission a risk assessment and report on the health of the tree. Based on the findings of that report, the city decided to remove the tree in the interest of protecting the public. In May 2024, Save the Davis-Meeker Garry Oak, a local advocacy group (Group), filed a complaint for declaratory and injunctive relief and requested a temporary restraining order. The superior court granted the temporary restraining order request, and the city immediately moved to dissolve the temporary restraining order. After hearing arguments from the parties, the superior court granted the city's motion to dissolve the temporary restraining order, finding that the mayor was not obligated to obtain a permit to remove the tree based on the court's

reading of relevant municipal codes and state statutes.[1] Accordingly, the court found that the Group failed to establish a clear legal or equitable right, the first element a petitioner seeking a temporary restraining order is required to demonstrate. The Group appeals the order dissolving the temporary restraining order.

We hold that the superior court erred in concluding that the mayor was not required to obtain a permit prior to removing the tree under the Tumwater Municipal Code. We reverse and remand for reinstatement of the temporary restraining order and further proceedings consistent with this opinion.

FACTS

I. BACKGROUND

The Garry oak tree at the center of this case is listed on Tumwater's historical register.[2] The tree is categorized on the register as historic property. According to the register, "[t]he tree is significant as a specimen tree of the Garry oak species, believed to be approximately 400 years old." *Id.* The register explains that the tree provided resources for the Coastal Salish Indigenous people. Adding to the tree's historical significance, it is rooted on the Cowlitz Trail, the northern branch of the Oregon Trail. *Id.*

In May 2023, according to Mayor Sullivan, "a substantial limb fell partially onto the southbound lanes of Old Highway 99." Clerk's Papers (CP) at 116. After the incident, the city

---

[1] The superior court judge who granted the temporary restraining order was a different judge than the one who granted the motion to dissolve the temporary restraining order.

[2] *Historical Register: Davis Meeker Garry Oak Tree*, CITY OF TUMWATER, https://www.ci.tumwater.wa.us/Home/Components/FacilityDirectory/FacilityDirectory/48/3381 [https://perma.cc/P4HM-4LNM].

commissioned Sound Urban Forestry to assess the tree. The assessment was performed by a certified arborist and urban forester who is contracted with the city of Tumwater as a tree protection professional. The arborist assigned the tree a high-risk rating. The arborist provided the following comments and recommendation in his report:

> With the exception of the recent large branch failures, the Meeker Oak appears to be in very good health. The crown density, leaf color, leaf size and internode growth all indicate a vigorous tree. However, there are structural concerns associated with the significant decay found in the stem base, lower main stem, east facing co-dominant stem and large scaffold branches. Probable future failures include large diameter scaffold branches from the east facing co-dominant stem and the entire west facing co-dominant stem at the union. The associated inclusions and stress loads will contribute to future failures. Structural support systems in conjunction with pruning were considered but the extent of decay in the main stem and upper east side of the canopy removes that as a mitigation option in my opinion.
>
> The other mitigation options are retrenchment pruning and removal. A considerable amount of thought has been put into my final recommendation. The retrenchment option would be controversial to say the least along with the potential of its ineffectiveness. The targets[3] around this veteran tree are many and high-use and the risk rating would remain high. If the City of Tumwater and the community opts for retrenchment pruning, there will be a need for the development of pruning specifications and a long-term management plan.
>
> Based on my findings and information I have been provided, I am recommending removal.

*Id.* at 41.

The arborist's report included a memorandum from consulting arborists, whose services the arborist requested "to obtain additional information about the extent of decay at the base of the tree to provide the City of Tumwater with a more informed risk assessment and management recommendations." *Id.* at 48. In the memorandum, the consulting arborist stated:

---

[3] "Targets" in the report refer to Highway 99, parking areas, power-lines, and the aircraft hangar near the tree. CP at 40.

> The tomogram indicates there is slightly more sound wood tan is required to support the tree. However, due to the extent of the decay and thin shell wall around measuring points 3, 4, and 18 it is my opinion that this tree should be managed as a veteran tree and have retrenchment pruning performed to reduce the tree height and spread by approximately 15 feet. Reducing the tree height and spread will result in lowered wind loads acting on the trunk and branch unions resulting in a lower likelihood of failure.
>
> If this tree is retained, it should be reassessed with sonic tomography in five years to determine if the decay is continuing to spread and what the remaining shell wall is at that time. Additionally, 4 to 6 inches of wood chip mulch should be added within the dripline of the tree to improve soil conditions. The wood chip mulch should be kept 12 inches from the base of the tree.

*Id.*

Based on the consulting arborists' report, Mayor Sullivan made the decision to remove the tree in order "to protect the public and the City from potential liability." *Id.* at 34.

## II. PROCEDURAL HISTORY

The Group, "is a local citizen action group dedicated to protecting the Davis-Meeker Garry Oak and the birds that need it today and tomorrow, using science, advocacy, education, and on-the-ground conservation." *Id.* at 166. On May 24, 2024, the Group filed a complaint for declaratory and injunctive relief in Thurston County Superior Court. The Group asked the superior court to grant a temporary restraining order (TRO) to prevent Sullivan from removing the tree pending further order from the court, and then to grant a permanent injunction barring removal. The Group also sought declaratory judgment that the decision to remove the tree violated the Migratory Bird

No. 58881-1-II

Treaty Act of 1918 (MBTA), 16 U.S.C. §§ 703-712, Tumwater Municipal Code (TMC) 2.62.060,

TMC 2.62.030, and the Administrative Procedure Act, ch. 34.05 RCW.[4]

The superior court granted the requested TRO, ordering the mayor to "immediately cease

and desist from all efforts to remove the Davis Meeker Garry Oak until further court order." CP at

26. The same day, the mayor filed an emergency motion to dissolve the TRO. The mayor argued

that the TRO was deficient because it was issued without notice, it failed to require a bond, and it

failed to provide an end date.

On May 31, 2024, the court granted Sullivan's motion to dissolve the TRO, but first

extended the TRO until June 5, 2024, "to provide sufficient time to allow the plaintiffs to make an

emergency motion on appeal." *Id.* at 155. The court issued a short, written order, consisting of two

sentences, to this effect. In its oral ruling, the court made the following statements:

> THE COURT: . . . Under the law, a party requesting a temporary restraining
> order must show three things, a clear legal or equitable right, a well-grounded fear
> of immediate invasion of that right, and that the act complained of will result in
> actual and substantial injury to the moving party. All of these requirements have to
> be met, and the plaintiffs have not met the first criteria.

> To establish a clear legal or equitable right, the moving party must show
> that it is likely to prevail on the merits. Here, plaintiffs make a number of claims,
> and I'll begin with the claim that the legal right arises from the Tumwater Municipal
> Code. The mayor's decision to proceed is compliant with the code. There was not
> an obligation to obtain a permit before removing a historic tree as opposed to a
> historic structure, and the code allows removal of a tree the city determines is
> posing a hazard.

> With respect to the newly raised argument regarding RCW 27.53.060, the
> defendant is correct that was not briefed previously. A quick look at that statute
> reveals that that chapter of the law addresses archaeological resources, not trees,

---

[4] In June 2024, the Group sought to remove its action to the federal court based on federal question jurisdiction. The federal district court ordered that the case be remanded to Thurston County Superior Court, finding that the Group's "removal of the state court case under 28 U.S.C. §§ 1441 and 1446 is not effective, and it does not invoke this Court's jurisdiction." *Id.* at 337.

and therefore that is not applicable and it does not provide this court a basis for a finding of clear legal or equitable right.

*Id.* at 154-55.

The Group sought emergency review from this court. In the emergency appeal, the Group argued that the superior court "failed to consider RCW 27.53.060, under which the mayor cannot cut down the Davis Meeker oak tree without an Archeological Excavation and Removal Permit from the state archaeology department." *Id.* at 165. The Group also argued that removing the tree without a permit would violate the Tumwater Municipal Code. In July 2024, this court granted an expedited appeal. Comm'r's Ruling, *Save the Davis-Meeker Garry Oak v. Sullivan*, No. 58881-1-II, at 6 (Wash. Ct. App. July 23, 2024).

ANALYSIS

The Group argues that portions of the Tumwater Municipal Code, such as Tumwater's historic preservation ordinance (ch. 2.62 TMC) and the city's tree and vegetation protection ordinance (ch. 16.08 TMC), as well as chapter 27.53 RCW, apply to the Garry oak, and therefore the mayor's decision to remove the tree without obtaining the necessary permits violated the code and the state statute. The mayor responds that chapter 2.62 TMC (the historic preservation ordinance) does not apply to the tree, but even if it does, the decision to remove the tree was not in violation of the code because an exemption found in TMC 2.62.060(B)(3) applied. The mayor also argues that a different chapter of the municipal code, ch. 16.08 TMC, applies to the tree, and although that chapter also requires a permit prior to tree removal, a similar exemption for hazardous trees applies (TMC 16.08.075(D)(3)), and thus, the decision to remove the tree did not violate either relevant chapter of the TMC. Finally, the mayor contends that chapter 27.53 RCW does not apply to the Garry oak, as the tree is not an archeological object.

6

We hold that the superior court erred in concluding that no permit was required to remove the tree under the TMC, based on the trial court's belief that the code provision did not apply to historic trees and only applied to historic structures. Further, we hold that as it relates to historic trees, chapter 2.62 TMC supersedes the tree code found in chapter 16.08 TMC, because TMC 16.08.070(S) states that "[*i*]*n addition to the provisions of this chapter*, the cutting or clearing of historic trees requires the issuance of a certificate of appropriateness *in accordance with TMC Chapter 2.62*." (Emphasis added.) As such, the superior court erred in finding that "the code allows removal of a tree the city determines is posing a hazard,"[5] because the exemption for hazard trees found in chapter 16.08 TMC does not apply to the tree, and the "[e]mergency measures" outlined in chapter 2.62 TMC refer only to "[e]mergency repair[s]" and do not allow for the removal of the tree without a certificate of appropriateness.

## I. STANDARD OF REVIEW

We review orders dissolving temporary restraining orders for abuse of discretion, and we review question of law involved in such orders de novo. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013).

## II. TUMWATER MUNICIPAL CODE

The Group argues that because the tree is listed on Tumwater's historical register, the mayor must obtain approval from the Tumwater Historic Preservation Commission before removing the tree, relying on ch. 2.62 TMC. According to the Group, the city's historic preservation ordinance, ch. 2.62 TMC, applies to the tree because the statue applies to any "property" listed on Tumwater's Register of Historic Places, which the code defines as real

---

[5] VRP at 14-15.

7

property. The Group maintains that the tree constitutes both "real property" and a historic "site" within the meaning of the code. *See* TMC 2.62.030, 2.62.050, 2.62.060. The Group argues, moreover, that the exemptions listed in chapter 2.62 of the code do not apply to the Garry oak.

The mayor asserts that the city's decision to remove the tree did not violate the municipal code. According to the mayor, the historic preservation ordinance applies only to structures, and thus does not forbid removal of the tree because the tree is not a structure. The mayor also argues that the Garry oak is properly regulated as a heritage tree, and therefore a more specific chapter of the code applies—chapter 16.08, which addresses the protection of trees and vegetation. Under chapter 16.08, the mayor contends, the city is allowed to remove the tree without a permit because TMC 16.08.075(D)(3) exempts dead or hazardous trees from the tree removal permit requirement. Regardless of which chapter of the code governs the tree, the mayor argues, an exemption to the permit requirement applies due to the hazard the tree presents.

In its reply brief, the Group argues that the exemptions to obtaining a tree removal permit under chapter 16.08 TMC do not apply in this case, as "the exemptions in the tree code are exemptions from the tree code, not exemptions from the historic code." Reply Br. of Appellant at 14. The Group maintains that removal of a historic tree requires a "certificate of appropriateness from the Tumwater Historic Preservation Commission." *Id.*

A. Chapter 2.62 TMC: The Historic Preservation Ordinance

The purpose of Tumwater's historic preservation ordinance is "to provide for the identification, evaluation, and protection of historic resources within Tumwater and preserve and rehabilitate eligible historic properties." TMC 2.62.010. This includes "[s]afeguard[ing] the heritage of Tumwater as represented by those buildings, districts, objects, sites and structures

which reflect significant elements of the city's history." TMC 2.62.010(A). Relevant definitions

listed in the historic preservation ordinance include:

> K. "Emergency repair" means work necessary to prevent destruction or dilapidation to real property or structural appurtenances thereto immediately threatened or damaged by fire, flood, earthquake or other disaster.
>
> L. "Historic property" means real property together with improvements thereon, except property listed in a register primarily for objects buried below ground, which is listed in a local register of a certified local government or the National Register of Historic Places.
> . . . .
> P. An "object" is a thing of functional, aesthetic, cultural, historical, or scientific value that may be, by nature or design, movable yet related to a specific setting or environment.
> . . . .
> T. A "site" is a place where a significant event or pattern of events occurred. It may be the location of prehistoric or historic occupation or activities that may be marked by physical remains, or it may be the symbolic focus of a significant event or pattern of events that may not have been actively occupied. A site may be the location of ruined or now nonexistent building or structure if the location itself possesses historic cultural or archaeological significance.
> . . . .
> W. A "structure" is a work made up of interdependent and interrelated parts in a definite pattern of organization. Generally constructed by man, it is often an engineering project.

TMC 2.62.030.

Based on a plain reading of the code, we disagree with the Group's contention that the

Garry oak meets the definition of "structure." However, we agree with the Group that the Garry

oak does fall within the code's definition of "[h]istoric property," as the tree is "listed in a local

register of a certified local government or the National Register of Historic Places." TMC

2.62.030(L). Tumwater's historical register dedicates a full webpage to the Davis Meeker Garry

Oak Tree. *Historical Register: Davis Meeker Garry Oak Tree*, *supra*. The register states that the

tree is "[l]isted on the Tumwater Register of Historic Places," and categorizes the tree as "Historic

9

Propert[y]." *Id.* The webpage discusses the historical significance of the Davis Meeker Garry Oak Tree. Based on this description, we further agree with the Group that the Garry oak likely also falls within the definition of "site," as defined in TMC 2.62.030(T), as the register outlines the tree's "historic cultural [and] archaeological significance." Accordingly, the tree falls within the purview of chapter 2.62 TMC.

Section 2.62.060 TMC governs "review of changes to Tumwater register of historic places properties." (Boldface omitted.) Under this section, "[n]o person shall change the use, construct any new building or structure, or reconstruct, alter, restore, remodel, repair, move, or demolish any existing property on the Tumwater register of historic places or within a historic district on the Tumwater register of historic places without review by the commission and without receipt of a certificate of appropriateness." TMC 2.62.060(A). A "waiver of a certificate of appropriateness," means that "the commission has reviewed the proposed whole or partial demolition of a local register property or in a local register historic district and failing to find alternatives to demolition has issued a waiver of a certificate of appropriateness which allows the building official or director of community development to issue a permit for demolition." TMC 2.62.030(Y). The review requirement applies to "all features of the property, interior and exterior, that contribute to its designation and are listed on the nomination form." TMC 2.62.060(A). Therefore, unless an exemption applies—which we discuss below—anyone seeking to remove the Garry oak would need to obtain a certificate of appropriateness under chapter 2.62 TMC.

B. Chapter 16.08 TMC: Protection of Trees and Vegetation

Chapter 16.08 TMC addresses the protection of trees and vegetation. The purposes of this chapter include "retain[ing] trees and vegetation for their positive environmental effects including,

but not limited to, the protection of wildlife habitat," and "promot[ing] identification and protection of trees that have historical significance; are unusual due to their size, species, or age; are unusual for their aesthetic quality; or have other values or characteristics that make them worthy of protection." TMC 16.08.020(C)-(D). The code includes the following classifications of trees:

> L. "Hazardous tree" means any tree that, due to its health or structural defect, presents a risk to people or property.
>
> M. "Heritage tree(s)" means tree(s) designated by the city and their owners as historical, specimen, rare, or a significant grove of trees.
>
> N. "Historic tree" means any tree designated as an historic object in accordance with the provisions of TMC Chapter 2.62.

TMC 16.08.030.

Again, the Davis Meeker Garry Oak Tree is listed on Tumwater's Register of Historic Places, and is categorized as a historic property. *Historical Register: Davis Meeker Garry Oak Tree*, *supra*. Accordingly, the tree meets the definition of a "heritage tree" as the city has designated it to be historical. Because the tree also meets the definition of "historic object" as defined in TMC 2.62.030(P) ("An 'object' is a thing of functional, aesthetic, cultural, historical, or scientific value that may be, by nature or design, movable yet related to a specific setting or environment"), it also falls within the definition of a "[h]istoric tree" under TMC 16.08.030(N).

Because the tree is a heritage tree, "[a] tree removal permit is required for removal." TMC 16.08.075(D)(1). According to the code, "[t]he city tree protection professional shall evaluate any heritage trees prior to a decision on the removal permit. Recommendations for care, other than removal, will be considered." TMC 16.08.075(D)(2). As is true with the protections outlined in chapter 2.62, the protections in chapter 16.08 apply to the Garry oak, and the superior court erred

in concluding that "[t]here was not an obligation to obtain a permit before removing a historic tree as opposed to a historic structure." Verbatim Rep. of Proc. (VRP) at 14.

C. Applicability of Exemptions Listed in the Municipal Code

We now turn to the question of whether an exemption from the certificate of appropriateness and the tree removal permit requirements applied in this case.

The trial court found that even if the Tumwater Municipal Code applied to the Davis Meeker Garry Oak Tree, exemptions within the Code allowed the mayor to remove the tree without seeking a certificate of appropriateness or tree removal permit. We disagree.

Under the historic preservation ordinance TMC 2.62.060(B)(3), neither a certificate of appropriateness nor review by the commission is required for any property listed on the register for "[e]mergency measures defined in TMC 2.62.030." However, "emergency measures" refers to "[e]mergency repair[s]," which is defined as "work necessary to prevent destruction or dilapidation to real property or structural appurtenances thereto immediately threatened or damaged by fire, flood, earthquake or other disaster." TMC 2.62.030(K). The "[e]mergency repair[s]" exemption found in TMC 2.62.030(K) does not allow for removal of the tree.

Although TMC 16.08.075(D)(3) purports to allow for the removal of a heritage tree without a tree removal permit after verification by the city tree professional, TMC 16.08.070(S) provides that "[*i*]*n addition to the provisions of this chapter*, the cutting or clearing of historic trees requires the issuance of a certificate of appropriateness *in accordance with TMC Chapter 2.62*." (Emphasis added.) Thus, as it relates to historic trees, chapter 2.62 TMC supersedes the tree code found in

chapter 16.08 TMC. The seeming inconsistencies in the Tumwater Municipal Code are not for us to resolve.[6]

### III. THE TRO

To obtain a TRO, the petitioner must establish "(1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) conduct that has or will result in actual and substantial injury." *Travis v. Tacoma Pub. Sch. Dist.*, 120 Wn. App. 542, 553, 85 P.3d 959 (2004). In dissolving the TRO, the superior court determined that the Group had not satisfied the first element of establishing a clear legal or equitable right. Whether the Group established a clear legal or equitable right involves questions of both law and fact. With respect to the legal question, the superior court, as we note above, erroneously concluded that the tree did not fall within the purview of the Tumwater Municipal Code, and therefore, the city was not obligated to obtain a permit or approval prior to removing the tree. This erroneous determination of law led the superior court to conclude that the Group lacked a clear legal or equitable right.

### CONCLUSION

The superior court took an erroneous view of the law in its application of the Tumwater Municipal Code. Because this erroneous view of the law caused the superior court to hold that the Group could not establish a clear legal or equitable right, the first element it needed to show to obtain a TRO, we remand for reinstatement of the TRO and further proceedings consistent with this opinion.

---

[6] In light of our holding as it relates to the Tumwater Municipal Code, we need not address the application of chapter 27.53 RCW.

No. 58881-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

MAXA, J.

VELJACIC, J.